KATHERINE ANDER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4724-65. Filed March 16, 1967.

*Frank Delany*, for the petitioner.
*Wallace Musoff*, for the respondent.

FORRESTER, *Judge:* The respondent determined a deficiency in petitioner's income tax for the year 1961 in the amount of $1,240.60. All of the issues save one have been resolved by the parties and such settlements will be reflected in the Rule 50 computation which will be made herein.

The sole issue remaining for our determination is the deductibility of an attorney's fee of $6,250 paid by petitioner in 1961.

FINDINGS OF FACT

Those facts which are necessary to an understanding of the sole remaining issue in this fully stipulated case are as follows:

Petitioner, hereinafter called Katherine, timely filed her separate Federal income tax return for 1961 with the district director of internal revenue, Manhattan District, New York.

Prior to August 30, 1957, Katherine and her then husband, Saul Ander, hereinafter called Saul, jointly held title to a residence in Long Island, N.Y., which they sold on that date for $38,700. Such purchase price was paid by the buyer in the form of certified checks made payable jointly to Katherine and Saul.

After these checks were received Katherine did not endorse them but Saul endorsed or caused them to be endorsed, without her knowledge or consent, and thereafter negotiated them and utilized the entire proceeds for his own benefit. Katherine, however, was not able to confirm this until February 16, 1961, the date of the entry of judgment in the Supreme Court in the State and County of New York, which is hereinafter described.

In May 1960 Katherine instituted an action against Saul for conversion and fraud demanding judgment for one-half of the proceeds of the above-described certified checks. This cause was tried in 1961 and at such trial Saul for the first time admitted to his unlawful conversion of the certified checks, whereupon on February 16, 1961, the Supreme Court of the State and County of New York, held:

(b) Defendant [Saul Ander] will pay and plaintiff [Katherine] will accept the sum of $15,000.00 in settlement of all claims by the plaintiff against the defendant, and more particularly the conversion action now pending * * *, that action to be marked settled and discontinued * * *

(c) No counsel fee shall be payable by the defendant [Saul] to the plaintiff [Katherine] or her attorney. Plaintiff will pay her attorney out of her own funds for his services and disbursements * * * in the aforesaid conversion action. * * *

Thereafter and still during 1961 Katherine received the above $15,000 and paid her attorney's fee in the amount of $6,250, such fee being paid solely in connection with her action based entirely on her husband's conversion of one-half the proceeds of the sale of their jointly-owned residence by forging her signatures to the certified checks hereinbefore described.

Katherine deducted such fee as a part of her itemized deductions on her individual 1961 income tax return which deduction was disallowed in full by the respondent in his statutory deficiency notice as "not * * * allowable under any of the sections of the Internal Revenue Code." In her petition filed herein Katherine reasserted her right to the deduction with the assertion "That as a result of a forgery, petitioner lost $15,000. and it required the expenditure of $6,250 to recover the forged funds." This assertion was denied generally by the respondent's answer, and thus the issue was drawn.

OPINION

Respondent asserts that petitioner has forfeited any right to consideration by us of her contention that the claimed deduction of $6,250 constitutes a related or collateral expense of a "theft" loss, or an expense in the nature of salvage, by contending that petitioner has used this approach or theory for the first time on her brief. Respondent then confines his arguments almost entirely to the proposition that the fee in question was an expense paid in defending or perfecting title to property and therefore nondeductible.

We feel that respondent is being far from candid in making such assertion and it is for this reason that we have gone into definitive detail concerning the exact language by which this issue was framed by the statutory deficiency notice, the petition, and the answer. We do not believe it possible that respondent was misled or that petitioner's position was concealed from him by the language "that as a result of

a forgery petitioner lost $15,000. and it required the expenditure of $6,250 to recover the forged funds."

Petitioner freely concedes and agrees with respondent's arguments that expenses in connection with defending or perfecting title to a capital asset are capital and nondeductible, but asserts, we think properly, that such abstract legal proposition is far afield from the facts presented here.

In our view Katherine's actions against Saul do not fall within the idea of defending or perfecting title to property. There was never any question of the title to the jointly owned residence or to the certified checks payable jointly to Katherine and Saul or to the proceeds from those checks when they were cashed. Katherine denominates Saul's forgeries and subsequent actions as "theft" within the meaning of section 165 (a) and (c)(3)[1] and we think she is correct. Such section provides:

(a) * * * There shall be allowed as a deduction any loss sustained during the taxable year * * *

*         *         *         *         *         *         *

(c) * * * In the case of an individual, the deduction under subsection (a) shall be limited to—

*         *         *         *         *         *         *

(3) losses of property not connected with a trade or business, if such losses arise from * * * theft. * * *

Respondent does not argue, or seem to contend that Saul's forgery and subsequent actions did not amount to theft; and that they did, seems now to be beyond question.

A threshold element is decided by *People* v. *Morton*, 308 N.Y. 96, 123 N.E. 2d 790 (1954), which holds that the New York Married Women's Act (sections 50 and 51 Domestic Relations Law) has abrogated the common law rule that there can be no theft by a husband of his wife's property.

Section 1.165–8(d), Income Tax Regs., defines the term "theft" as including, but not necessarily limited to, *inter alia*, "larceny," and sections 880 and 1290 of the Penal Law of New York define forgery and larceny as—

the false making or counterfeiting of [a] signature, * * * and * * * [the defrauding of] another of the use and benefit of property or [appropriation of] the same to the use of the taker, * * *

We also note the following language of *Edwards* v. *Bromberg*, 232 F. 2d 107 (C.A. 5):

the word "theft" is not like "larceny", a technical word of art with a narrowly defined meaning but is, on the contrary, a word of general and broad connotation, intended to cover and covering any criminal appropriation of another's

---

[1] All references are to the Internal Revenue Code of 1954.

property to the use of the taker, particularly including theft by swindling, false pretenses, and any other form of guile.[4] We reject the contention on the authority of Alison v. United States, 344 U.S. 167, 73 S. Ct. 191, 97 L. Ed. 186, holding that theft includes embezzlement, and of Morris Plan Co. v. Commissioner, 42 B.T.A. 1190; Muncie v. Commissioner, 18 T.C. 849; Miller v. Commissioner, 19 T.C. 1046; Earle v. Commissioner, 2 Cir., 72 F. 2d 366; and Borden v. Commissioner, 2 Cir., 101 F. 2d 44. In fact there are no decisions to the contrary. [Footnote omitted.]

All of the above make it abundantly clear that Saul's actions constituted a "theft" within the intendment of section 165(c)(3), *supra*.

Again respondent has not made the argument, but in fairness we should examine into the question whether such a salvage or collateral expense as is here embodied in the attorney's fee of $6,250 should be allowed as, or as a part of, the "theft" loss. This fee is not a part of the loss of the property itself because that has been recovered. Katherine has made no claim for the difference between the $15,000 which she recovered in 1961 and the $19,350 which Saul had obtained from her by his forgery and unlawful conversion (theft), and therefore we must consider that she has been made whole insofar as the theft itself is concerned. However, it seems clear that the costs of recovery or salvage are so closely identified and connected with the theft loss itself as to be further or additional or collateral theft losses.

Respondent has stipulated that the fee of $6,250 was paid solely in connection with petitioner's action against her husband for conversion and fraud in the New York Supreme Court and that said action was based entirely upon Saul's conversion by forgery. We consider that this resolves all questions of the purpose of, necessity for, and reasonableness of the fee in petitioner's favor. Respondent's regulations accord with our view that such a fee is deductible as a part of the theft loss for they provide:

Section 1.165-8, Income Tax Regs.:

Theft losses.

(c) * * * The amount deductible under this section in respect of a theft loss shall be determined consistently with the manner prescribed in § 1.165-7 for determining the amount of casualty loss allowable as a deduction under section 165(a). * * *

and section 1.165-7(a)(2)(ii) provides: "The cost of repairs to the property damaged is acceptable as evidence of the loss of value."

The analogy between a necessary recovery cost of stolen property and a necessary repair cost to damaged property is clear.

A further analogous situation was dealt with by us in the Court reviewed case, *Ticket Office Equipment Co.*, 20 T.C. 272, affd. 213 F. 2d 318 (C.A. 2), in which case we held that attorney and adjuster fees

paid to negotiate an insurance settlement were deductible. In that case we said at page 280:

Much stronger is a case like the present where the loss if it occurred would be due to a casualty [6] * * *

---

[6] * * * It would be anomalous in the extreme if expenses paid to reduce the amount of such an ordinary loss [casualty] were not themselves deductible in full, as partaking of the nature of the loss to which they relate. See *Arrowsmith* v. *Commissioner,* 344 U.S. 6; * * *

We conclude that the attorney's fee of $6,250 is deductible in full.

There remains one subsidiary question, again not raised by the respondent, as to the proper year of deduction. Its resolution is controlled by section 1.165–1(d)(3), Income Tax Regs., which provides that a theft loss shall be treated as sustained during the year it was discovered by the taxpayer except that:

However, if in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received.

The facts are that Katherine discovered this theft loss in 1960 when she instituted her action for conversion and fraud against Saul or in 1961 when, according to the stipulation, she was first able to confirm his fraudulent conversion. In either event it is clear that 1961 was the proper deduction year for if the "discovery" was made in 1960, then Saul's payment to her of $15,000 in 1961 establishes that her prospects of recovery were reasonable. It follows that 1961 is the proper year for the deduction which she seeks.

The final remaining issue is thus decided in petitioner's favor, but because of the concessions heretofore noted,

*Decision will be entered under Rule 50.*