JANE K. NICKELL, now Jane K. Johnson, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOAN D. KINCAID, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nickell v. Commissioner
Docket Nos. 21317-81, 21318-81.
United States Tax Court
T.C. Memo 1985-302; 1985 Tax Ct. Memo LEXIS 319; 50 T.C.M. (CCH) 200; T.C.M. (RIA) 85302; June 25, 1985. Paul E. Sullivan, for the petitioners. Andrew M. Winkler, for the respondent. CLAPP MEMORANDUM OPINION CLAPP, Judge: Respondent determined a deficiency in Jane Nickell's (Jane) income tax for 1977 of $41,655.40 and deficiencies in Joan Kincaid's (Joan) income tax for 1976 and 1977 of $2,324.38 and $50,979.14, respectively. After concessions by all parties, the only issue for our determination is whether petitioners are entitled to deduct legal fees they paid in 1977 under section 165 or section 212. [1]
These consolidated cases were submitted fully stipulated inder Tax Court Rule 122. The stipulations of fact and attached exhibits are incorporated herein by this reference. Both Jane and Joan resided in Kentucky when their petitions were filed. Petitioners are the daughters *321 of Garvice Kincaid. In June 1973, Joan executed an option which gave Mr. Kincaid the right to purchase all the stock she owned in Lexington Finance Company (LFC). Also in June 1973, Joan and Jane executed options which gave Mr. Kincaid the right to purchase all the stock they owned in several banks. Jane and her father also executed two options that were not dated. These options provided that Mr. Kincaid would purchase other bank stock owned by Jane whenever she requested him to do so and that Jane would sell the stock to Mr. Kincaid whenever he requested her to do so. Mr. Kincaid died on November 21, 1975, without having exercised any of the options. On November 11, 1976, Joan informed the executor of Mr. Kincaid's estate that she was cancelling the LFC option. On December 1, 1976, the executor notified Joan of its election to exercise the LFC option and tendered payment, which Joan refused. On January 14, 1977, the executor completed a blank stock power which Joan had given to Mr. Kincaid and transferred the stock. LFC issued a new certificate for the stock to the executor. On January 19, 1977, Joan instituted an action in Fayette Circuit Court, Fayette, Kentucky. *322 The relief Joan requested included: 1) that the LFC option be declared null and void; 2) that she be declared the owner of the LFC stock; and 3) punitive damages. The Fayette Circuit Court granted summary judgment for the executor on August 30, 1978, declaring it to be the owner of the LFC stock. Joan appealed. The Kentucky Court of Appeals reversed the decision of the Circuit Court on January 11, 1980. The Supreme Court of Kentucky affirmed the decision of the Court of Appeals on May 26, 1981, finding that the right to purchase the LFC shares was personal to Mr. Kincaid and did not pass to the executor. On remand to the Circuit Court, Joan filed on July 21, 1981, a supplemental complaint in which she requested additional relief, including any dividends paid on the LFC stock which were received by the executor. On November 11, 1976, Joan and Jane notified the executor that they were cancelling all bank stock options and demanded return of the bank stock certificates. Upon refusal, petitioners, on January 27, 1977, instituted separate actions in Fayette Circuit Court. The relief they requested included: 1) that the bank stock options be declared null and void; 2) that *323 they be declared owners of the bank stock; and 3) punitive damages. On July 22, 1977, the executor attempted to exercise the options on some of the bank stock. On October 25, 1979, the Circuit Court granted summary judgment for the executor declaring it to be owner of the stock subject to the options it had attempted to exercise. On December 4, 1979, the Court extended its judgment to the undated options, deciding that those options were binding on Jane and the executor. The Kentucky Court of Appeals affirmed the decision of the Circuit Court on December 19, 1980. The Kentucky Supreme Court did not review the case. Joan paid legal fees of $58,155.82 during 1977 with regard to the LFC stock case. She contends this amount is deductible under section 212(1) or section 212(2). [2] She also contends the fees are deductible under sections 165(a) and 165(c)(3). [3]
*324 Joan paid legal fees of $752.24 during 1977 with regard to her bank stock case. Jane paid legal fees of $55,980.14 during 1977 with regard to her bank stock case. They contend those amounts are deductible under section 212(1) or section 212(2). Respondent contends none of the legal fees are deductible because they are capital expenditures within the meaning of section 263. We agree with respondent. LFC STOCK CASE 1. Section 212
Whether legal fees are deductible under section 212 depends on the origin and character of the claim with respect to which the expense was incurred, rather than the taxpayer's primary purpose in litigating the claim. Woodward v. Commissioner,397 U.S. 572, 577 (1970); Boagni v. Commissioner,59 T.C. 708, 713 (1973). If the origin of the claim is the acquisition or disposition of capital assets, or the defense or perfection of title to property, the legal fees are nondeductible capital expenditures. Von Hafften v. Commissioner,76 T.C. 831, 834 (1981), and the cases cited therein. Joan argues that the litigation in the LFC case involved the collection of income and the management, *325 conservation, and maintenance of income-producing property. The record is clear, however, that the linchpin of the LFC case was title to the LFC stock. The litigation arose out of Joan's grant to her father of an option to acquire stock she held for investment. Although the nominal issue in the case was the validity of the option, [4] the real issue was who owned the stock. Whether the origin of Joan's claim is viewed as the disposition of a capital asset or the defense of title is immaterial since her legal fees are nondeductible in either event. Von Hafften v. Commissioner,supra.
Joan relies on Cruttenden v. Commissioner,644 F.2d 1368 (9th Cir. 1981), affg. 70 T.C. 191 (1978), to support her contention that her claim was for the recovery of the stock and, therefore, her fees are deductible. She overlooks the fact that the legal expenses involved in Cruttenden did not relate to title to property. See Cruttenden v. Commissioner, supra at 1373-1374. *326 Because title is the focus of her LFC case, Cruttenden offers Joan no support. [5]
Joan also contends that even if some of her legal fees are nondeductible capital expenditures, that portion of her fees which relates to her claim for dividends and punitive damages are deductible. She is correct to the extent that Boagni v. Commissioner,supra at 713-714, provides that if the origin of a claim is in part a nondeductible source and in part a deductible source, an allocation of the legal fees is required. [6] However, her claim for dividends was first made by supplemental complaint in 1981. The record does not show that any of the amount Joan paid in 1977 was for a claim for dividends. *327 Furthermore, Joan may not deduct legal fees purportedly allocable to her claim for punitive damages. It is a basic principle of remedies that a claim for punitive damages may not be made independently. It must accompany an underlying claim of an actual wrong.The origin of the underlying claim controls whether legal fees allocable to a claim for punitive damages are deductible, and in this case we have found that the origin of the claim pertains to title. A portion of otherwise nondeductible expenses should not be transformed into a deduction just by the addition to a pleading of a demand for punitive damages.See Reed v. Commissioner,55 T.C. 32, 41 (1970). Thus, even if a portion of Joan's legal fees were allocable to her claim for punitive damages, that portion still would not be deductible. [7]
2. Section 165
Joan *328 also contends that the legal fees she paid are deductible under sections 165(a) and 165(c) as expenses paid to recover property lost by theft, relying on Ander v. Commissioner,47 T.C. 592 (1967). She is mistaken. Losses from theft within the meaning of section 165(c)(3) involve criminal intent. Johnson v. United States,291 F.2d 908, 909 (8th Cir. 1961). That element was not involved in the LFC dispute. As shown by the decision in its favor by the Circuit Court, the executor acted under at least the color of legal authority. Hence, there was no theft within the meaning of section 165(c)(3). Rafter v. Commissioner,60 T.C. 1, 13 (1973), affd. without published opinion 489 F.2d 752 (2d Cir. 1974). [8]
BANK STOCK CASES Joan and Jane repeat the arguments relating to section 212 that Joan made with regard to the LFC stock case. Petitioners contend that the litigation was brought to prevent *329 the theft and unauthorized transfer of the stock to the executor, to recover possession of the stock certificates and to protect their dividend income. However, no income was produced or collected in the litigation. Again, the record is clear that the linchipin of these cases was title. They arose out of the granting of options by petitioners to their father to acquire stock they held for investment.While the nominal issue again was the validity of the options, the real issue was title to stock. Accordingly, for the reasons discussed above, the legal fees Joan and Jane paid during 1977 with regard to the bank stock cases are not deductible. Decision will be entered under Rule 155.
Footnotes
1. All references to sections are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.↩
2. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income * * *. ↩
3. SEC. 165. LOSSES. (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to-- * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.↩
4. The primary question in the LFC case and in the bank stock cases was whether the options were personal to Mr. Kincaid and, therefore, expired upon his death.↩
5. See also Bertram v. Commissioner,T.C. Memo. 1978-247, affd. without published opinion 633 F.2d 221↩ (9th Cir. 1980).
6. For example, in Spangler v. Commissioner,323 F.2d 913↩ (9th Cir. 1963), affg. a Memorandum Opinion of this Court, legal expenses allocable to a claim of title to stock were held nondeductible, but a deduction was allowed for the expenses allocable to a claim for accumulated dividends on the stock.
7. But see Clements v. Commissioner,T.C. Memo. 1981-530↩. In any event, nothing on the record indicates Joan's legal fees in 1977 would have been any less if her complaint had not included a demand for punitive damages. We find that, none of the legal fees Joan paid in 1977 is allocable to her [Illegible Line]
8. Even if a theft had occurred, the origin of claim rule applies to deductions claimed under section 165 as well. Boothe v. Commissioner,82 T.C. 804, 807↩ (1984), on appeal (9th Cir. July 30, 1984).