DAVID FRANKEL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Frankel v. Commissioner
Docket No. 31366-85.
United States Tax Court
T.C. Memo 1988-1; 1988 Tax Ct. Memo LEXIS 1; 54 T.C.M. (CCH) 1442; T.C.M. (RIA) 88001; January 4, 1988; As amended January 4, 1988 William J. Hagan, for the petitioner. J. Leon Peace and Daniel Morman, for the respondent. WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined a deficiency in petitioner's Federal income tax in the amount of $ 17,867 for the taxable year 1981. The issues for us to decide are whether petitioner is entitled to deductions for the taxable year 1981 for (1) a theft loss; (2) certain employee business expenses; and (3) certain charitable contributions. FINDINGS OF FACT
*3 Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. At the time the petition was filed, petitioner resided in Berwyn, Pennsylvania. During 1981, petitioner was employed by the Federal government as a Director of Public Affairs and Communications with the Department of Health, Education and Welfare. His grade was GS-15. Petitioner's adjusted gross income in 1981 was $ 45,813. Petitioner claimed a $ 53,900 deduction for a theft loss on Schedule A of his 1981 Federal income tax return. Petitioner computed his deduction by claiming a $ 94,000 total loss before reimbursement, and subtracting (1) $ 40,000 for anticipated insurance reimbursement, and (2) the $ 100 statutory limitation. In a statement attached to his 1981 Federal income tax return, petitioner stated that the actual value of the items allegedly stolen was in excess of $ 150,000, but that the actual cost was $ 94,000. TPetitioner married Marion Frankel ("Ms. Frankel") in Florida on May 25, 1969. Prior to her marriage to petitioner, Ms. Frankel received alimony from her former husband and owned a house in Florida, *4 where she kept many of her personal belongings. Prior to their marriage, petitioner and Ms. Frankel entered into a prenuptial agreement in which (1) petitioner agreed to pay Ms. Frankel support equal to the alimony that she forfeited by marrying petitioner, and (2) petitioner released any claim he might have against property acquired by Ms. Frankel both before and after their marriage. Shortly after their marriage Ms. Frankel moved her personal belongings into petitioner's apartment in Pennsylvania. Approximately one year after her marriage to petitioner, Ms. Frankel sold her house in Florida and received between $ 50,000 and $ 60,000 in cash from the sale. In 1975, petitioner and Ms. Frankel moved into a house which was located at 1163 State Road in Andalusia, Pennsylvania (the "marital residence"). Petitioner and Ms. Frankel both signed the lease of the marital residence as tenants. During the time that petitioner and Ms. Frankel resided together at the marital residence, they purchased insurance from Allstate Insurance Company ("Allstate") and the Federal Crime Insurance Program ("Federal Crime") to cover theft losses. Both petitioner and Ms. Frankel were shown as insureds *5 under the Allstate and Federal Crime policies. The Allstate policy limit was $ 30,000, and the Federal Crime policy limit was $ 10,000. During the time Ms. Frankel lived with petitioner, she purchased many items of personal property with the money she brought into the marriage. Ms. Frankel also lent petitioner money to pay for his son's college education. Petitioner treated Ms. Frankel cruelly and she was afraid of him. Ms. Frankel first separated from petitioner in 1978, but she returned to the marital residence shortly thereafter. Petitioner continued to treat Ms. Frankel cruelly upon her return to the marital residence. On several occasions between 1978 and 1980, petitioner ordered Ms. Frankel to leave and not to take any property with her. Ms. Frankel permanently separated from petitioner and left the marital residence in May of 1980. At that time she moved some, but not all, of her personal belongings. Ms. Frankel used Lincoln Van and Storage Company ("Lincoln Van") to assist her in that moving process. Ms. Frankel tried to move without petitioner's knowledge because she knew that petitioner would not allow her to take all of her personal belongings. Petitioner, *6 in fact, prevented Ms. Frankel from taking all of her belongings when she moved. Ms. Frankel returned to the marital residence on June 1, 1981. At that time she forcibly entered the marital residence by breaking a window and removed many items of household furniture, furnishings, and household effects. Many of the items Ms. Frankel removed admittedly belonged to petitioner, not to her, but she took the items belonging to petitioner under a claim of reimbursement. That claim of reimbursement was based upon the loan Ms. Frankel made to petitioner for his son's college education, which had not been repaid, as well as upon the forfeited alimoney she thought petitioner owed to her under the prenuptial agreement. Ms. Frankel employed Smyth Van and Storage of Pennsylvania, Inc. ("Smyth Van") to assist her with the move on June 1, 1981. Prior to June 1, 1981, Smyth Van had acquired Lincoln Van. Smyth Van transferred the property that Ms. Frankel removed from the marital residence on June 1, 1981, to Engle Van Lines, Inc. ("Engle Van"). Engle Van then transported the property to Ms. Frankel's new residence in Golden, Colorado. (Hereinafter, Smyth Van and Engle Van will be sometimes *7 collectively referred to as the movers.) Petitioner reported to the police as a theft the removal of the property from the marital residence on June 1, 1981. The police incident report stated that Ms. Frankel was responsible for removing the property from the marital residence. The police officer who supervised the investigation of the incident concluded that it was a "domestic matter" and informed petitioner that it would not be investigated further. On June 2, 1981, petitioner telephoned Allstate and Federal Crime to report that a theft of personal property from the marital residence had occurred on June 1, 1981. Petitioner filed written claims for reimbursement of loss from burglary with Allstate on June 16, 1981, and with Federal Crime on July 21, 1981. Petitioner settled his claim with Federal Crime on March 3, 1984, and received payment in the amount of $ 5,000. The claim against Allstate listed the total value of property taken as $ 140,000, but Allstate did not allow that claim. Petitioner commenced a civil action against Allstate on November 18, 1981. On February 1, 1984, the Court of Common Pleas of Bucks County, Pennsylvania, rendered a decision in favor of Allstate *8 and cited a lack of credibility on the part of petitioner. On May 26, 1983, petitioner commenced a civil action against the movers and others. In his complaint, petitioner alleged that the total value of the property taken on June 1, 1981, was in excess of $ 180,000. On January 31, 1986, a settlement was reached in petitioner's lawsuits against the movers whereby the movers agreed to pay $ 2,500, $ 1,250 each, to petitioner. Ms. Frankel filed suit for divorce from petitioner in March, 1983. A final Order of Dissolution of Marriage was entered on September 14, 1984. As part of the separation agreement, incorporated in that Order, petitioner agreed that Ms. Frankel was entitled to keep as her sole and separate property, inter alia, all of the items listed in a deposition taken of her on August 24, 1982. The items listed in that deposition are substantially the same property that forms that basis of the theft loss deduction claimed by petitioner. Petitioner claimed a total deduction of $ 3,589 for employee business expenses on his 1981 Federal income tax return. On a statement attached to that return, those expenses were categorized as follows: (1) Entertainment and client *9 relations -- $ 2,512; (2) Tolls, taxis, etc. - $ 171; (3) Parking, garages, etc. - $ 732; and (4) Gifts, flowers, etc., hospital visits - $ 174. Petitioner claimed a deduction in the amount of $ 1,514 on his 1981 Federal income tax for charitable contributions. OPINION Respondent argues that petitioner's theft loss deduction should not be allowed because (1) the events that allegedly gave rise to the deduction did not constitute a theft under state law; (2) even if there was a theft, petitioner has failed to establish that he was not fully compensated for his alleged losses; and (3) even if petitioner was not fully compensated, his claims in tort for such losses were still open at the close of tax year 1981. Petitioner contends that a theft occurred either by his ex-spouse or, alternatively, by the movers and that he is entitled to deduct $ 46,340 as a theft loss. [1] For the reasons discussed below, we hold for respondent. *10 Petitionerr has the burden to establish that a theft occurred and the amount of the loss. Welch v. Helvering,290 U.S. 111 (1933); Rule 142 (a). [2]
Section 165 [3] allows individuals to deduct a theft loss which is not compensated for by insurance or otherwise to the extent the loss exceeds $ 100. The question of whether an event constitutes a theft, and thus gives rise to a deduction, is determined by the law of the state where the event occurred. Morgan v. Commissioner,309 U.S. 78 (1940); Paine v. Commissioner,63 T.C. 736 (1975), affd. without published opinion 523 F.2d 1053 (5th Cir. 1975); Monteleone v. Commissioner,34 T.C. 688 (1960); Edwards v. Bromberg,232 F.2d 107 (5th Cir. 1956). Since the alleged theft occurred, if at all, in Pennsylvania, we must make that determination under Pennsylvania law. *11 Pennsylvania law provides that a person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof. 18 Pa. Cons. Stat. Ann. sec. 3921(a) (Purdon 1983). The crime of theft contains an element of specific intent. Commonwealth v. Nance,222 Pa. Super. 329, 295 A.2d 87, 89 (1972); Hilliard Lumber Co. v. Harleysville Mut. Cas. Co.,175 Pa. Super. 94, 103 A.2d 436, 437 (1954). If property is taken under a claim of right, even if mistaken, the specific intent element of theft is lacking under Pennsylvania law. Penn-Air, Inc. v. Indemnity Insurance Co. of North America,439 Pa. 511, 269 A.2d 19, 23 (1970). Petitioner, in effect, asks the Court to allow a theft loss deduction for the property subsequently allotted to Ms. Frankel in their divorce. [4] Petitioner, however, has failed to prove that either Ms. Frankel or either of the movers perpetrated a crime of theft under Pennsylvania law on June 1, 1981. The marital residence had been Ms. Frankel's home prior to the time she separated from petitioner, and she remained on the *12 lease as a tenant. Ms. Frankel thus may have had a legal right to enter the marital residence. [5] Also, some of the property which Ms. Frankel owned was located in the marital residence. Thus, Ms. Frankel merely may have exercised her legal right to obtain possession of at least that part of the property. The property taken by Ms. Frankel consists of three sorts: property owned by her separately, marital property, and property owned by petitioner separately. Petitioner relies on Beasley v. Beasley, 110 Mont. Co. L. Rep. 1 (1981), for the proposition that a spouse may not use self-help to protect an interest in property owned by that spouse. Beasley, however, was not a criminal case. [6] Petitioner has cited no authority for the proposition that the exercise of self-help by Ms. Frankel in removing her separate *13 property and the marital property from the marital residence would be a crime. For that matter, petitioner has failed to prove an essential element of the crime of theft under Pennsylvania law, i.e., that Ms. Frankel had a specific criminal intent when she removed the property. See Commonwealth v. Nace, supra.[7] If Ms. Frankel took the property under a claim of right, that claim would defeat the element of specific intent, even if the claim of right was mistaken. Penn-Air, Inc. v. Indemnity Insurance Co. of North America, supra.Based upon the foregoing and the record as a whole, we hold that petitioner has not proved that a theft occurred by Ms. Frankel under Pennsylvania state law when Ms. Frankel removed property from the marital residence. Petitioner alternatively argues that if Ms. Frankel did not steal his property, *14 the movers must have stolen it; however, there is no evidence in the record to support such a contention. With respect to that contention, the record contains only petitioner's testimony -- he speculates that if Ms. Frankel did not remove the property from the marital residence, the movers must have done so. [8] That speculation certainly is not sufficient evidence to prove that both movers, or either of them, committed a crime of theft during the removal of the property from the marital residence. The movers obviously were working at the direction of Ms. Frankel. Therefore, we also hold that petitioner has failed to prove that a theft occurred by the movers under Pennsylvania law. *15 At common law, a wife who takes her husband's property without his consent does not commit larceny or embezzlement. See Ungar v. Commissioner,18 T.C. 688 (1952), affd. 204 F.2d 322 (2d Cir. 1953). However, we have found no case that applies that rule under Pennsylvania law. Furthermore, we have not found any authority for the proposition that Ms. Frankel's taking, pursuant to a claim of reimbursement, of petitioner's separate property is equivalent to a taking of property pursuant to a claim of right under Pennsylvania law. If a claim for reimbursement is not equivalent to a claim of right, the Penn-Air, Inc. case is not authority for holding that the required specific intent element of the crime of theft is lacking in regard to Ms. Frankel's taking of petitioner's separate property.[9] However, respondent's alternative basis for disallowing the deduction for the theft loss, i.e., that petitioner has failed to prove that he has not been compensated fully for his alleged theft loss, permits us to resolve the issue. [10]
*16 Petitioner received compensation for his alleged loss from three separate sources. He received $ 5,000 from Federal Crime, $ 1,250 from Lincoln Van, and $ 1,250 from Engle Van -- a total of $ 7,500. We agree with respondent that petitioner has failed to meet his burden of proving that he sustained a theft loss in excess of that amount. The amount of loss for purposes of section 165(a) is the lesser of (i) the fair market value of the property immediately before the loss or (ii) the adjusted basis for determining the loss from the sale or other disposition of the property. Secs. 1.165.8(c) and 1.165-7(b), Income Tax Regs. The amount of the deduction is the amount of the loss, reduced by $ 100 and by the amount of insurance or other form of compensation received by petitioner. Section 165(a). In his claim against Allstate, petitioner asserted that the cash value of the property allegedly stolen on June 1, 1981, was approximately $ 140,000. In petitioner's 1981 Federal income tax return, he stated that the "Loss Submitted in Inventory Form" was over $ 150,000 and that the "actual cost of these items totals $ 96,000." In his lawsuit against the movers, petitioner claimed that *17 the loss exceeds $ 180,000. We need not address these discrepancies, however, because petitioner's collective basis in the items allegedly stolen, which he concedes [11] is much less than any of those various claims, marks the upper limit of any theft loss to which he possibly could be entitled. [12]
Petitioner asserts that among the items of property removed by Ms. Frankel on June 1, 1981, was approximately $ 4,700 in cash, which allegedly represented the proceeds of a loan from petitioner's credit union obtained by him during March 1981. Ms. Frankel denied taking any cash from the marital residence. Petitioner testified that although he had represented to the lender that the proceeds would be used to purchase a car, he never purchased the car with the proceeds. He testified that he instead kept the cash at his home. The application for that loan, however, shows that petitioner represented that the borrowed cash was to be used for income taxes, tuition, books, and consolidation of *18 other loans. We note that the Court of Common Pleas of Bucks County, Pennsylvania, in holding against petitioner in his suit against Allstate, cited a lack of credibility on the part of petitioner. In the Allstate trial, petitioner testified that he initially was not aware of Ms. Frankel's involvement in the June 1, 191, incident. Yet, the testimony of one of the police officers supervising the investigation of the alleged theft stated that petitioner, on the next day, had asked that Ms. Frankel be "locked up." The officer also testified that petitioner stated that he believed Ms. Frankel was responsible for the theft. Petitioner has introduced no evidence, other than his own vague statements, [13] to substantiate his bases in the items of property allegedly stolen. [14] Due to the testimony of Ms. Frankel, [15] which controverts much of petitioner's testimony, as well as the inconsistencies pointed out above in petitioner's actions, statements, and testimony, we would require more proof than petitioner's own testimony for such substantiation. *19 A statement in petitioner's reply brief provides the best summation of our reaction to the alleged theft loss: "Who kept what we do not know for sure." Instead of informing us of the items of property "stolen" and their respective bases, petitioner's presentation of this case served only to obfuscate [16] further the record surrounding Ms. Frankel's removal of the property. This obfuscation is particularly fatal to petitioner because he, not respondent, has the burden of proof. Rule 142(a). Thus, based upon the foregoing and the record as a whole, we hold that petitioner has failed to meet his burden of proving that the amount of his alleged loss exceeds $ 7,500, the amount for which he has received compensation. [16]
Since we have concluded that petitioner has failed to prove that a theft occurred under Pennsylvania law, at least as to part of the property, and has failed to prove that he sustained a loss in excess of the amount for which he was compensated, we need not consider respondent's last argument, i.e., that any loss was not sustained in 1981. The next issue we must decide is whether petitioner is entitled to a deduction for certain *20 employee business expenses which he claimed on his 1981 Federal income tax return. Respondent argues that petitioner has failed to substantiate these deductions as required by section 274. [17] Petitioner alleges that the amounts claimed by him as employee business expenses represent unreimbursed expenses incurred as a result of his employment with the Federal government. Aside from his own statement, however, petitioner has offered neither records nor other evidence to substantiate the claimed expenses. Even petitioner's testimony regarding these expenses is vague. While he testified that his per diem reimbursement from the Federal government was $ 30 to $ 50 less than his actual expenses, he did not testify about any of the details regarding any specific expenses. [18] Section 274(d) requires proof of the amount of the expense, the time and place it was incurred, the business purpose of the expense, and the business relationship of the expense. [19] Petitioner must meet all of these requirements before he is entitled to a deduction. He, however, has met none of them. *21 Furthermore, section 274(d) requires or sufficient evidence. Since the record includes no corroboration of the 1981 expenses whatsoever, much less the specificity required by section 274, we find that petitioner has failed to substantiate the deductions disallowed by respondent. See LaForge v. Commissioner,434 F.2d 370, 372 (2d Cir. 1970), remanding on this issue 53 T.C. 41 (1969). We therefore sustain respondent's determination in regard to the 1981 employee business expenses. Petitioner also claimed deductions for charitable contributions in the amount of $ 1,514 that were disallowed by respondent. However, petitioner offered neither evidence nor argument concerning these deductions. Therefore, we consider the matter conceded by petitioner. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Petitioner claimed a deduction of $ 53,900 on his 1981 Federal income tax return. Petitioner computed that deduction by claiming a loss of $ 94,000 and reducing it by $ 40,000 for estimated insurance reimbursement and by the $ 100 statutory limitation. Petitioner apparently now concedes in his original brief that the loss should be computed by deducting an amount equal to petitioner's alleged basis in the property and asserts that amount is $ 46,340. We note that, as represented by petitioner in his original brief, the bases of the various categories of property that petitioner alleges were stolen add to only $ 46,320. That sum does not take into account the $ 100 statutory limitation or any actual or anticipated reimbursement from insurance or otherwise. Petitioner's reply brief states, without elaboration, that the total basis is $ 45,340, but petitioner does not comment upon the discrepancies between these amounts. ↩
2. All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code of 1954, as amended and in effect during 1981. ↩
3. The relevant language of sec. 165 provides:
SEC. 165. LOSSES. (a) GENERAL RULE. -- There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) AMOUNT OF DEDUCTION. -- For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale of other disposition of property. (c) LIMITATION ON LOSSES OF INDIVIDUALS. -- In the case of an individual, the deduction under subsection (a) shall be limited to -- (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit; though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $ 100. For purposes of the $ 100 limitation of the preceding sentence, a husband and wife making a joint return under section 6013 for the taxable year in which the loss is allowed as a deduction shall be treated as one individual. No loss described in this paragraph shall be allowed if, at the time of filing the return, such loss has been claimed for estate tax purposes in the estate tax return. * * * (e) THEFT LOSSES. -- For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss. ↩
4. Petitioner makes no claim that the property allotted to Ms. Frankel in their divorce is different than the property which forms the basis of the theft loss deduction claimed by petitioner. ↩
5. Under Pennsylvania law privileged entry is a complete defense to the crime of burglary. 18 Pa. Cons. Stat. Ann. sec. 3502↩ (Purdon 1983). 6. Beasley↩ was an unreported divorce case where the court, apparently via an interlocutory order, granted equitable relief and required the return of the property surreptitiously and wrongfully appropriated from the marital home. 7. Cf. Brown v. Commissioner,T.C. Memo. 1971-60↩ (discussion of North Carolina law). 8. The record also contains evidence of petitioner's settlement of his lawsuit against the movers, but the attorney representing one of the movers testified that the $ 1,250 paid by each of the movers to petitioner represented a settlement for nuisance value, an obvious fact shown by the settlement of the $ 180,000 claim for such a relatively minor amount. Petitioner fails to point to any other evidence in the record to support a conclusion that the movers retained possession of any of the property. ↩
9. Petitioner alleges in his brief that the basis for such property is $ 37,130. ↩
10. Petitioner makes an additional argument in his reply brief that based upon Ander v. Commissioner,47 T.C. 592 (1967), petitioner's legal costs in pursuing his claims against the insurance companies and movers are deductible. Petitioner alleges that his legal costs in that regard were in excess of $ 10,000. Aside from the lack of any evidence in the record to support the amount of petitioner's alleged costs, petitioner must prove, as the taxpayer in Ander↩ proved, that a theft occurred before such costs may be deducted. 11. See note 1, supra.↩
12. This assumes arguendo that petitioner has proved that a theft had occurred, and, thus, can only be relevant to the property classified as his separate property. ↩
13. Petitioner prepared an inventory of the property allegedly stolen by Ms. Frankel as a part of the proof of loss he submitted to Allstate. Petitioner testified regarding this inventory; however, his testimony regarding the value of each of the individual items listed on the inventory meandered back and forth between apparent replacement costs of the items and the amounts actually paid for the items. Even if we were to accept his testimony as the gospel, which we do not, it was confused at best. ↩
14. Petitioner contends in his brief and reply brief that the items off property taken from the marital residence on June 1, 1981, had total bases of either $ 46,340 or $ 45,340, yet he does not point to evidence in the record to support either conclusion. See note 1, supra.↩
15. Ms. Frankel testified that the actual costs of the items allegedly stolen were much lower than the amounts claimed by petitioner, and that many of those items were purchased by Ms. Frankel and owned by her individually or jointly with petitioner. Moreover, Ms. Frankel testified, "I knew we wouldn't have paid big money because we didn't have big money." ↩
16. See note 13, supra.↩
17. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (a) ENTERTAINMENT, AMUSEMENT, OR RECREATION. -- (1) IN GENERAL. -- No deduction otherwise allowable under this chapter shall be allowed for any item -- (A) ACTIVITY. -- With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bonafide business discussion (including business meetings at a convention or otherwise,) that such item was associated with, the active conduct of the taxpayer's trade or business, or (d) SUBSTANTIATION REQUIRED. -- No deduction shall be allowed -- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts,
unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary must by regulations provide that some or all the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. ↩
18. Petitioner's briefs are also vague regarding these expenses. He makes no mention of them in his opening brief. In his reply brief, petitioner only makes arguments and does not cite any specific evidence or any authority. Petitioner's main argument is that "it is inevitable that one traveling does exceed the government allowances." While such an excess of expenses over reimbursement may have occurred, petitioner does not show us how it occurred in this instance. ↩
19. Petitioner at no time has suggested that any of the expenses at issue are not subject to the substantiation requirements of section 274(d). We take that as a concession by petitioner that, to the extent the expenses are deductible under section 162, they also are subject to section 274(d). We need not discuss whether the expenses are properly deductible under section 162 because of our disposition of the issue via section 274(d). ↩