RICHARD H. AND RUTH G. MARX, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Marx v. Commissioner
Docket No. 12152-79
United States Tax Court
T.C. Memo 1991-598; 1991 Tax Ct. Memo LEXIS 634; 62 T.C.M. (CCH) 1370; T.C.M. (RIA) 91598; December 3, 1991, Filed *634 Decision will be entered under Rule 155. Leonard Jay Schrager, Austin L. Hirsh, Arnold A. Pagniucci, and Lawrence H. Brenman, for the petitioners. Diane L. Berkowitz, for the respondent. GOFFE, Judge. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION The Commissioner determined deficiencies in petitioners' Federal income tax as follows: Year
Deficiency
1974
$ 26,997
1975
$ 19,953
Due to petitioners' concessions, [1] the remaining issue in this case is whether petitioners were entitled to deduct as a casualty loss under section 165(c)(3)[2] the costs of repairing the roof of their personal residence. *635 FINDINGS OF FACT Petitioners resided in Highland Park, Illinois, at the time they filed the petition in this case. (The reference to "Marx" is used to identify petitioner Richard H. Marx) Some of the facts have been stipulated and are so found. The stipulations, supplemental stipulations, and attached exhibits are incorporated herein by this reference. Petitioners' residence was constructed in 1962 from an architectural design made expressly for them. This design called for the use of cedar shingles over 1 by 4 roof boards on the monitored portions of the roof. The flat portions were graveled built-up roofing over a plywood deck. In mid-April 1972, petitioners noticed water damage on the interior living room wall which was caused by a leak in the roof. The leak was coming from the flat roof situated between two peaks. In May 1972, Marx contacted ABCO Mobile Maintenance and spoke to John Farrentino (we shall hereafter refer to ABCO Mobile Maintenance and John Farrentino collectively as ABCO) about repairing the leaking roof. ABCO orally agreed to furnish all labor and materials necessary to waterproof and stop the leak in the roof. On May 25, 1972, ABCO sent a crew of two *636 men to work on petitioners' roof. Afterwards, the men informed petitioners that the roof had been repaired and ABCO then sent petitioners a bill for the work in the amount of $ 1,550. Petitioners paid the bill and were reassured that if anything were wrong with the work, ABCO would take care of the problem. During the next rainfall within 1 to 2 weeks after the repairs, the roof began to leak in 15 to 20 places. These leaks were greater than the initial leak which was isolated in a single location. Marx contacted ABCO either when it was raining or the following day to tell them that the roof had not been repaired but, to the contrary, was leaking much worse than before. ABCO returned to petitioners' home with two workmen. They turned a garden hose on the roof and Marx showed them the leaks. The new leaks were in the same general area where ABCO attempted to repair the original leak. ABCO acknowledged that more work was required on the roof and proceeded to make the additional repairs. During the next rainfall, the roof leaked again, causing the drywall ceiling to fall in and damage a light fixture, resulting in substantial damage to the interior of petitioners' home. The *637 water no longer merely leaked in through the roof, but now streamed into the house at other locations. Marx called ABCO during this rain storm to inform them of the increased severity of the problem. ABCO made two additional attempts to correct the leaks in 1972, but was unsuccessful. Because petitioners lack roofing expertise, they were not sure of exactly what work ABCO performed during the subsequent attempts to repair the roof. At some point, ABCO refused to attempt any further work on the roof. On October 25, 1972, Marx filed a civil complaint in the Circuit Court of Cook County, Illinois, for breach of contract against ABCO Mobile Maintenance and Farrentino. He amended the complaint on December 26, 1974, adding a claim of breach of warranty. Marx contacted several roofers to try to have the roof repaired. Jones & Cleary Roofing Co. Inc., by a letter dated June 11, 1973, offered to completely reroof petitioners' house for $ 25,875. Marx turned the estimate over to his insurance adjuster, Underwriters Adjusting Company, which denied the claim on July 6, 1973. Marx also contacted Keeffer Roofing, a bonded and insured roofer, which submitted an estimate to him on November *638 1, 1974, to repair the roof for $ 1,350. The Keeffer Roofing proposal guaranteed the repairs for 5 years and all work was to be done by fully insured union workmen. Marx chose not to have Keeffer Roofing repair the roof. Petitioners attempted to obtain additional estimates to repair the roof. When Marx contacted other roofers, some did not respond or when they learned that petitioners were involved in a lawsuit with the previous roofer, they chose not to submit estimates. Marx obtained a judgment of $ 13,000 in the lawsuit against ABCO on July 30, 1975. In September 1975, Marx attempted to collect this judgment by causing a citation to be issued to discover what assets were owned by both Farrentino and ABCO Mobile Maintenance, but was unable to collect anything. Marx then filed a garnishment action in October 1975 against Farrentino and ABCO Mobile Maintenance which went unsatisfied because the lending institution to which it was directed did not possess assets belonging to either defendant. Marx made further attempts to satisfy the judgment by causing the following documents to be filed: A wage deduction summons in November 1975; a citation to discover assets against Farrentino's *639 wife in November 1975; a citation to discover assets in February 1976; a citation to discover assets in June 1976; a wage deduction summons in June 1978; and a citation to discover assets in September 1980. In each instance, the sheriff was unable to effect service of either a citation or a summons because the individual to be served could not be located. Thus, Marx concluded that further attempts to collect the judgment would prove futile. In 1975, Marx contacted the original architect of the house to inspect it. The architect advised petitioners that the entire roof would have to be replaced because it had been coated with polyurethane, an insulation material. The polyurethane had dried and cracked, resulting in the holes through which water entered petitioners' house. Marx did not make any attempt to repair the roof until he decided, in 1975, upon the recommendation of the architect and a roofer whom he contacted, to replace the entire roof. Petitioners paid Herion Roofing & Siding Co. $ 14,308 and Shetland Contracting $ 1,520 to replace the roof. Petitioners also paid George Young & Co. $ 1,550 for repairs to the drywall. In addition to the expenses for repair of the *640 structural damage to the house, Marx incurred legal expenses of $ 5,961 for bringing the lawsuit against ABCO, $ 181 for consulting fees to the architect, and approximately $ 762 for cleaning supplies. Petitioners deducted all of these expenditures on their 1975 income tax return as a casualty loss. The Commissioner disallowed the entire deduction. ULTIMATE FINDING OF FACT Petitioners sustained a casualty loss as a result of the damage ABCO caused when it attempted to repair petitioners' roof. OPINION Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." A limitation is placed on this deduction by individuals in section 165(c). If the loss is not incurred in a trade or business or in a transaction entered into for profit, then the loss must "arise from fire, storm, shipwreck, or other casualty, or from theft." Sec. 165(c)(3). Petitioners seek a deduction for the damage to the roof of their house as an "other casualty" under section 165(c)(3). Respondent argues that the roof damage is not a casualty loss contemplated in the definition of "other casualty" in section 165(c)(3). Even if the loss is *641 within that definition, respondent contends that the attorney's fees petitioners paid to maintain the action against ABCO for breach of contract and warranty in repairing the roof should not be deductible. Further, respondent asserts that the amount petitioners paid to reroof the entire house is clearly excessive, and the amount deductible, if any, should be limited to the amount actually necessary to repair the damaged portion of the roof. Finally, assuming a casualty exists within the meaning of section 165(c)(3), respondent maintains that petitioners should not have deducted the loss in 1975 because they did not conclude until 1980 that they could not collect damages from ABCO. The term "casualty" is not defined in the Code or the regulations. The term "other casualty," as it is used in section 165(c)(3), has been held to occur: wherever unexpected, accidental force is exerted on property and the taxpayer is powerless to prevent application of the force because of the suddenness thereof or some disability, [so that] the resulting direct and proximate damage causes a loss which is like or similar to losses arising from the causes specifically enumerated in section 165(c)(3). *642 * * * [White v. Commissioner, 48 T.C. 430, 435 (1967).]
See also Broido v. Commissioner, 36 T.C. 786, 793 (1961), and cases cited therein. In order for damage to qualify as a deductible casualty, there must be an abrupt change in the property's form. The suddenness requirement for a casualty loss: denotes an accident, a mishap, some sudden invasion by a hostile agency; it excludes the progressive deterioration of property through a steadily operating cause. * * * [Fay v. Helvering, 120 F.2d 253 (2d Cir. 1941), affg. 42 B.T.A. 206 (1940); emphasis added.]
In Fay v. Helvering, supra, we held that there was no casualty loss for termite damage discovered in 1935 in a home purchased in 1913. "The insects had obviously been at work for a long time, and the loss had therefore in fact taken place gradually although it was not discovered until it was complete." Fay v. Helvering, 120 F.2d at 253. The "destructive process was slow." Fay v. Helvering, 42 B.T.A. 206 at 208. Whether the leaks in petitioners' roof qualifies as a "casualty" turns upon a *643 factual determination of the suddenness of the loss itself, i.e., the lapse of time between the precipitating event and the loss proximately caused by that event. Maher v. Commissioner, 76 T.C. 593, 599-600 (1981), affd. 680 F.2d 91 (11th Cir. 1982). See also Hale v. Welch, 38 F. Supp. 754 (D. Mass. 1941) (casualty loss is a question of fact, to be determined upon evidence properly adduced at trial). Where the damage has been found to have been ongoing for several years prior to discovery, the loss has been denied. United States v. Rogers, 120 F.2d 244 (9th Cir. 1941); Dodge v. Commissioner, 25 T.C. 1022 (1956); Feinstein v. United States, 173 F. Supp. 893 (E.D. Mo. 1954). In situations, however, where the damage occurred in a relatively short period of time, usually 3 to 14 months, a casualty loss claim has been sustained. Kilroe v. Commissioner, 32 T.C. 1304 (1959); Buist v. United States, 164 F. Supp. 218 (E.D.S.C. 1958). Petitioners' house was constructed in 1962 but the roof was first discovered to be leaking in 1972. *644 There is no evidence in the record to suggest that the roof leaked before 1972. Although the architect's design for the house called for a tar and gravel surface on the flat portion of the roof, which has a life expectancy of 25 years, there is no evidence that that type of roof was in fact installed. Even if it had, the deterioration to petitioners' roof could have occurred through a "progressive deterioration" making this the "steadily operating cause" for the initial leak which petitioners experienced. Fay v. Helvering, 120 F.2d 253 (2d Cir. 1941); see also United States v. Lattimore, 353 F.2d 379 (9th Cir. 1965) (damages resulting from normal wear and tear are not sufficiently sudden to qualify as a casualty loss); Dodge v. Commissioner, 25 T.C. 1022 (1956) (termite damage occurring over at least 5 years is in the nature of gradual erosion or deterioration of property and is not a casualty loss). Therefore, we conclude that the initial leak which prompted petitioners to call ABCO for repairs is not a casualty as that term is used in section 165(c)(3). We turn now to petitioners' contention that the negligent workmanship *645 of ABCO caused the casualty loss, which required replacement of the entire roof. Relying upon the standards explained above, we conclude that petitioners did, indeed, suffer a casualty loss due to the work performed by ABCO. This Court has held that a casualty loss occurs when a construction worker's negligence directly results in damage to a taxpayer's residence. [3] The leaks in the roof after ABCO worked on it were significantly different from the initial leak. The massive leaks were sudden and unexpected and were independent of the minor leak which existed before ABCO attempted to repair the roof. White v. Commissioner, supra at 435. This finding is clearly supported by ABCO's repeated visits to the property to correct the leaks and Marx' subsequent successful lawsuit against ABCO for breach of contract and warranty.
We turn now to the question of the amount which petitioners may properly deduct as a casualty loss. *646 Petitioners submit that the entire roof was replaced and, therefore, that the total cost of replacing the entire roof should be deductible. Section 1.165-7(a)(2)(ii), Income Tax Regs., provides: (2) Method of valuation. * * * (ii) The cost of repairs to the property damaged is acceptable as evidence of the loss of value if the taxpayer shows that (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty.
We have decided that the leak which existed in petitioners' house before ABCO worked on the roof is not a casualty loss. There is no evidence as to whether the roof was the tar and gravel type with a 25-year lifespan or whether it consisted of smooth asphalt with a 10-year lifespan. The roof was 10 years old when petitioners noticed the initial leak. With these points in mind, we conclude that petitioners' deduction of the cost of replacing *647 the entire roof exceeds that amount permitted by section 1.165-7(a)(2)(ii), Income Tax Regs.
Section 1.165-7(a)(2)(ii), Income Tax Regs., provides that the cost of repairs to the property damaged is acceptable proof of the loss in value caused by the casualty with certain qualifications. Section 165(c) provides that the repairs cannot take care of more than the damage suffered. When petitioners replaced the entire roof in 1975, it was more than was necessary to correct the damage caused by ABCO. In 1974, Keeffer Roofing submitted an offer to repair the damage without re-roofing the entire house, thus permitting the house to be restored to its condition immediately before the casualty. Sec. 1.165-7(a)(2)(ii)(a), Income Tax Regs. Keeffer Roofing was a bonded and insured roofer. There is no evidence to explain why petitioners chose not to have Keeffer Roofing repair the roof, except for Marx' testimony that he thought he had "to keep the house in that condition as proof when I had this lawsuit [against ABCO]." This testimony was not corroborated by any other evidence. We do not believe this testimony. Keeffer Roofing submitted a written offer to Marx to repair the roof for *648 $ 1,350. No other evidence has been submitted to assist us in determining the precise value of petitioners' house immediately before the casualty and its value immediately thereafter. We hold, therefore, that the bid submitted by Keeffer Roofing represents the correct cost of repairing the damage to the roof and any amount over that is excessive. Sec. 1.165-7(a)(2)(ii)(b), Income Tax Regs. We also hold that the damage to the drywall resulted from the faulty roof repairs and the $ 1,550 paid to George Young & Co. for drywall repairs is deductible. In addition, we hold that the $ 181 paid for consultation fees with petitioners' architect is allowable as a casualty loss because a prudent homeowner would obtain professional consultation before entering into repairs on the house. This fee was "necessary to restore the property to its condition immediately before the casualty." Sec. 1.165-7(a)(2)(ii)(a), Income Tax Regs. The total casualty loss directly related to the roof repair is, therefore, allowable to the extent of $ 3,081. Petitioner deducted $ 5,961 in legal expenses incurred in pursuing his breach of contract and warranty claim against ABCO. Respondent argues that *649 money expended for legal expenses is not the "property" that is the subject of a casualty loss and, therefore, is not deductible under section 165. Tarsey v. Commissioner, 56 T.C. 553 (1971). In Tarsey, the taxpayer was involved in an automobile accident and argued that the full measure of his casualty loss was the economic detriment he suffered. There was no question that the taxpayer suffered a casualty loss measured by the fair market value of the automobile prior to the accident less the salvage value and the statutory exclusion of $ 100. The taxpayer chose to sue the driver of the other vehicle for this loss as well as other expenses and deducted the legal expenses. The Court in Tarsey reasoned that the legal costs did not affect the amount of the casualty loss itself. The taxpayer could: have decreased the amount of that loss for tax purposes, because the statute only allows a deduction for the amount of any casualty loss which is not compensated for by insurance or otherwise. If * * * [the taxpayers] had recovered any amount for the damage to their automobile, under the statute this amount would have diminished their casualty deduction. *650 * * * [Tarsey v. Commissioner, supra at 556.]
Cf. Ander v. Commissioner, 47 T.C. 592, 595 (1967) (legal expenses permitted to be included in calculation of theft loss under section 165 because the expenses are considered a cost of recovery "closely identified and connected with the theft loss itself as to be further or additional or collateral theft losses.") We hold that petitioners are not permitted to deduct the legal expenses of pursuing their breach of contract and warranty claim against ABCO. Finally, Marx testified that he expended approximately $ 762 for cleaning supplies which was included in his casualty loss deduction. The casualty loss occurred in May 1972 and was repaired in August 1975. Petitioners could have contacted a roofer to repair the damage within the first year of the casualty, rather than wait 2 additional years to repair the roof. The record does not show when these expenses were incurred. We thus hold two-thirds of the $ 762, or $ 508, to be excessive and permit petitioners a deduction of $ 254 for these cleaning supplies. Sec. 1.165-7(a)(2)(ii)(b), Income Tax Regs. Respondent's final argument *651 relates to the timing of petitioners' deduction. Petitioners deducted the casualty loss deduction on their 1975 tax return. Respondent contends that petitioners could not deduct the loss until it was conclusively established that they could not recover on the judgment obtained in the action against ABCO. Respondent argues that the proper year for the deduction was 1980 because it was in that year that petitioners gave up trying to collect the judgment. The timing principle for taking a loss deduction is often referred to as the "closed and completed transaction" doctrine. United States v. White Dental Co., 274 U.S. 398, 401, 71 L. Ed. 1120, 47 S. Ct. 598 (1927). Section 1.165-1(d)(1), Income Tax Regs., require a loss deduction to be taken in the year it is "closed and completed" and "fixed by identifiable events occurring in such taxable year." The regulations also provide that a taxpayer cannot sustain a loss when there is a reasonable prospect of recovery or reimbursement for the loss. Rather, the taxpayer must postpone recognition of the loss "until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of *652 recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances." Sec. 1.165-1(d)(2)(i), Income Tax Regs.
Marx' judgment against ABCO and Farrentino was entered in July 1975 and was never paid by the defendants. Marx followed up with collection efforts by causing a garnishment summons to be filed in October 1975 and by causing a wage deduction summons to be filed in November 1975. Neither of these actions produced any recovery. Finally, Marx caused a citation to be issued to discover assets against Farrentino's wife in November 1975, which also proved fruitless. We conclude, on these facts, that at the end of 1975 the prospects of recovery for the judgment against ABCO were slim, at best, and nonexistent, at worse. Therefore, we hold that it was proper for petitioners to deduct their casualty loss in 1975. The fact that Marx continued collection attempts on the judgment into later years is of no consequence. The regulations provide a mechanism for taxpayers to recognize the recovery of a casualty loss in a later year, which would be required had Marx been successful in collecting on *653 the judgment. Sec. 1.165-1(d)(2)(iii), Income Tax Regs. We reject respondent's contention that petitioners' loss deduction was premature. In light of these adjustments and petitioners' concessions, Decision will be entered under Rule 155.
Footnotes
1. Petitioners concede that losses sustained for their investment in the Amber Manor Partnership are limited to $ 1,980 for the taxable year 1974 and $ 13,962 for the taxable year 1975.↩
2. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for the taxable years 1974 and 1975, and Rule numbers refer to the Rules of Practice and Procedure of this Court.↩
3. Hayutin v. Commissioner, T.C. Memo 1972-127↩.