T.C. Memo. 2017-79

UNITED STATES TAX COURT

BARRY LEONARD BULAKITES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16878-14.                          Filed May 11, 2017.

Barry Leonard Bulakites, pro se.

<u>Monica D. Polo</u> and <u>Erin Kathleen Salel</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HOLMES, <u>Judge</u>:  Barry Bulakites is an insurance consultant whose clients are accountants, but who relied only on TurboTax when he prepared his own returns.  The Commissioner thinks he claimed a few too many deductions, but Bulakites argues that he has enough evidence to prove some of them and blames the software for luring him into claiming others.

[*2]                              FINDINGS OF FACT

Bulakites is a specialist in life insurance and annuities, and is frequently an expert witness on the subject.  He trains others in his field, and works for a firm whose clients are mostly accountants in need of advice on anything from how to sell their services to how to decide if a client is due a refund for a particular service sold.

The big issue in this case, however, arose from a dispute that happened years ago while Bulakites was at a different job.  He became ensnared in a lawsuit brought against a company called Wasley Products.  Though the details in the record are thin, we know the suit arose when 401(k) plan participants at Wasley sued the company where Bulakites worked.  He credibly testified that he was named as a defendant for his work on the plan, and in 2007 a global settlement left him on the hook for $500,000.  Bulakites says that he paid the settlement by taking out a $500,000 loan in 2007 secured by his home.  The promissory note was due in less than a year, but Bulakites planned to sell his home and use the proceeds to pay the note when it came due in October 2008.  The start of the Great Recession

[*3] turned out to be exactly the wrong time to need to sell a house, and he managed to pay only a fraction of what he owed.[1]

His troubles got even worse in 2009 when he and his ex-wife legally separated, and, a year later, divorced. Their separation agreement directed Bulakites to pay his ex-wife $2,000 per month for spousal support until the sale of the marital residence, at which point his payments would increase to $8,000. The real-estate market had not noticeably improved for him by 2009, and Bulakites credibly claimed during trial that the house was "under water" with "no hope" of a sale. He and his ex-wife never entered into any subsequent maintenance agreements, but in an effort to do "the right thing," Bulakites orally agreed with his ex-wife to increase his payments to $5,000 per month. He didn't quite keep up, but the documents in the record do show (and we find) that he paid her about $50,000 in both 2011 and 2012.

Bulakites used TurboTax to prepare his returns for the years at issue, and he now admits that he made a lot of mistakes in the process. These may have been what caught the Commissioner's attention, and in 2014 out went a notice of deficiency for the 2011 and 2012 tax years. Bulakites timely filed a petition with

---

[1] The promissory note does not reflect what the money was to be used for, and Bulakites introduced no additional records to explain this.

**[\*4]** the Court, but in the months leading up to trial he was largely unresponsive to the Commissioner's attempts at informal discovery. There were some problems once he arrived for trial as well. It turned out that Bulakites did not turn over some evidence to the Commissioner until the eve of trial. This he blamed on a flood at his home when it turned out the flood was three years before trial--though he explained that he was still receiving vital documentation back from a restoration company that very week. This narrative affected our view of his credibility.

Bulakites was a California resident when he began the case, which we tried in San Diego.

OPINION

The only issues left for us to decide are:

- Whether Bulakites is entitled to deduct the payments that he sent his wife in the 2011 and 2012 tax years;

- Whether he is entitled to deduct business-interest expenses for the 2011 and 2012 tax years;

- Whether he is entitled to deduct other business expenses for the 2011 tax year; and

- Whether he is liable for the accuracy-related penalty under section 6662(a)[2] for the years at issue.

---

[2] Unless stated otherwise, all section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court

(continued...)

**[\*5]** I.  Alimony Paid Deduction

| Year | Claimed amount | Allowed amount |
|------|----------------|----------------|
| 2011 | $70,580 | $24,000 |
| 2012 | 66,710 | 24,000 |

Section 215(a) allows as a deduction an amount equal to alimony paid. Section 71(b) defines alimony, and part of the definition requires that the payment be required by a divorce or separation instrument. Secs. 71(b)(1)(A), 215(b); see also Ellis v. Commissioner, T.C. Memo. 1990-456. A divorce or separation instrument is:

- a decree of divorce or separate maintenance or a written instrument incident to such a decree;

- a written separation agreement; or

- a decree requiring a spouse to make such payments.

Sec. 71(b)(2). Bulakites' oral modification of his written separation agreement doesn't work--it's well settled that an oral modification of a written instrument does not meet section 71's requirements. Sec. 71(b)(2); Gordon v. Commissioner, 70 T.C. 525, 529-30 (1978); Larievy v. Commissioner, T.C. Memo. 2012-247; Ellis v. Commissioner, T.C. Memo. 1990-456; sec. 1.71-1(c), Income Tax Regs.

---

[2](...continued)
Rules of Practice and Procedure.

[*6] We do find his motivation sincere, and he did prove that he paid his ex well over the $2,000 a month required by his separation agreement, but we have to hold that the law does not allow him to deduct those excess amounts as alimony. We therefore find for the Commissioner on this issue.

II.  Interest Deductions

| Year | Claimed amount | Allowed amount |
|------|----------------|----------------|
| 2011 | $31,000 | -0- |
| 2012 | 48,000 | -0- |

A taxpayer may deduct interest paid or incurred during the tax year if the interest is an ordinary and necessary expense of carrying on his trade or business. Sec. 162(a); Robinson v. Commissioner, 119 T.C. 44, 48 (2002); see sec. 163(a). A taxpayer must be able to substantiate that interest. Porter v. Commissioner, T.C. Memo. 2015-122; Thompson v. Commissioner, T.C. Memo. 2011-291. And this means that he must show that he made a payment *and* show what portion was *interest* and what portion was repayment of principal.

The evidence does show Bulakites made payments to his lender, but the amounts do not match those that he claimed on his tax returns, and he did not explain this discrepancy at trial. Bulakites also did not provide us with any business records regarding the loan, any loan statements, or any loan-repayment

**[\*7]** schedules. Without this type of documentation we are unable to tell whether these payments were made on the original 2007 loan. Remember that the note for that loan says it should have been paid in full by October 2008. We understand that it might have been his plan to pay the note with proceeds from the sale of his home, and that that sale didn't happen. The problem is that we can't figure out what happened to the note--was it refinanced? Was it extended? Without any paperwork (in a situation where there should have been lots of paperwork) we are left only with his testimony about the total amounts of the payments and the allocation of those payments between principal and interest. We do not find his testimony credible on this issue, and so sustain the Commissioner's determination.

III.    Other Expenses

| Year | Claimed amount | Allowed amount |
|------|----------------|----------------|
| 2011 | $185,673 | $142 |

Bulakites claimed a "deduction for other expenses" on his 2011 return. He claimed during trial that this was a carryforward of a net operating loss from a previous year that he mistakenly put on the wrong line of his return. He failed to contest this issue on brief, which we would normally deem a concession, see Rule 151(e)(4) and (5); Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Tufft v. Commissioner, T.C. Memo. 2009-59, but we will discuss it anyway.

**[\*8]** Section 172 allows a deduction for net operating loss carryovers from earlier years, and net operating loss carrybacks from later years as long as the taxable income for the current year is greater than zero. Sec. 172(a), (b)(2). A taxpayer substantiates his claim to such a deduction by filing with his return "a concise statement setting forth the amount of the net operating loss deduction claimed and all material and pertinent facts relative thereto, including a detailed schedule showing the computation of the net operating loss deduction." Sec. 1.172-1(c), Income Tax Regs. Bulakites filed no such documentation. During trial he did turn in a tax return for a previous year (though not the one that generated the net operating loss), but even with his testimony, that is not enough to substantiate his entitlement to a loss carryforward. See Gould v. Commissioner, 139 T.C. 418, 443 (2012), aff'd, 552 F. App'x 250 (4th Cir. 2014); Obedin v. Commissioner, T.C. Memo. 2013-223, aff'd, 655 F. App'x 583 (9th Cir. 2016).[3]

IV.    Penalty

The Commissioner asserts a section 6662(a) accuracy-related penalty for each year at issue. Section 6662 imposes the penalty when there is "any substantial understatement of income tax." Sec. 6662(b)(2). Here the

---

[3] The Commissioner has his own theory on how Bulakites calculated his carryover and where it really came from, but we need not analyze it.

**[\*9]** Commissioner met his burden of production with math. An understatement of tax is "substantial" if it exceeds the greater of $5,000 or "10 percent of the tax required to be shown on the return." Sec. 6662(d)(1)(A). Bulakites' understatements for the 2011 and 2012 tax years well surpass both $5,000 and 10% of the tax required.

The burden then swings to Bulakites to show that his mistakes were reasonable and in good faith. See sec. 6664(c)(1). He cannot. He admitted during trial that he deducted items he shouldn't have, and that he overstated certain losses. He tried to blame TurboTax for his mistakes, but "[t]ax preparation software is only as good as the information one inputs into it." Bunney v. Commissioner, 114 T.C. 259, 267 (2000). We therefore find for the Commissioner on this issue.

Decision will be entered under

Rule 155.