# United States Tax Court

T.C. Memo. 2022-109

BETTY AMOS,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 4331-18.                           Filed November 10, 2022.

————————

*Ayuban A. Tomas*, for petitioner.

*Derek P. Richman* and *Daniel C. Munce*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

URDA, *Judge*: Petitioner, Betty Amos, challenges a notice of deficiency on which the Internal Revenue Service (IRS) disallowed net operating loss (NOL) deductions claimed on her 2014 and 2015 tax returns and determined accuracy-related penalties under section 6662(a).[1] Ms. Amos, a certified public accountant (CPA) and former owner of multiple Fuddruckers restaurant franchises in Florida and Tennessee, contends that her declining business fortunes in 1999 and 2000 produced significant NOLs, which she carried forward to 2014 and 2015. The Commissioner responds that she has established neither the underlying NOLs nor that any portions of those NOLs remained

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[\*2]** available for use in 2014 and 2015. We will sustain the Commissioner's determinations.[2]

## FINDINGS OF FACT

I. *Ms. Amos's Business Background*

Ms. Amos is an accomplished Miami CPA and restaurateur. She graduated from the University of Miami in 1973, receiving a bachelor of business administration degree magna cum laude with a major of accounting. After graduation, Ms. Amos passed the Florida CPA examination and earned her master of business administration (again from the University of Miami) in 1976, which allowed her to practice as a CPA.

During her time in school, Ms. Amos worked as a financial analyst. She later transitioned to the role of tax adviser and investment manager for certain high net-worth individuals, including one of the founders of Burger King. Ms. Amos owned her own accounting firm and was active in both the American Institute of Certified Public Accountants and the Florida Institute of Certified Public Accountants.

While living in Miami, Ms. Amos became acquainted with Nick Buoniconti, a retired National Football League (NFL) Hall of Famer who had played football both for the University of Notre Dame and the Miami Dolphins. Mr. Buoniconti was looking for investment opportunities and decided to invest in the restaurant industry with Ms. Amos, who had gleaned insights into it from her clients. Ms. Amos and Mr. Buoniconti ultimately settled on the Fuddruckers restaurant chain after being alerted to it by another retired NFL player, Fred Willis. Ms. Amos, Mr. Buoniconti, and Mr. Willis thereafter formed a partnership, Abkey

---

[2] At trial, we reserved ruling on the Commissioner's relevance objections to Exhibits 15-P through 18-R and Exhibits 40-P through 47-P. The Commissioner argued that these exhibits are irrelevant as they relate to tax years different from the years at issue. While it is true "that every tax year stands on its own," *see Couturier v. Commissioner*, T.C. Memo. 2022-69, at \*8, it is "well settled that we may determine the correct amount of taxable income or net operating loss for a year not in issue . . . as a preliminary step in determining the correct amount of a net operating loss carryover" to the year at issue, *Lone Manor Farms, Inc. v. Commissioner*, 61 T.C. 436, 440 (1974), *aff'd without published opinion*, 510 F.2d 970 (3d Cir. 1975); *Amanda Iris Gluck Irrevocable Tr. v. Commissioner*, 154 T.C. 259, 269 (2020). We will overrule the Commissioner's objections.

[*3] No. 1, Ltd.,[3] in 1983 to become Fuddruckers franchisees in Florida, signing a multirestaurant development deal.

Mr. Buoniconti and Mr. Willis both moved from Florida before the first restaurant opened, however. Ms. Amos and Mr. Buoniconti subsequently bought out Mr. Willis's interest in the partnership. Although Mr. Buoniconti was not actively involved in the Fuddruckers venture, he did maintain a stake in the business. Despite the loss of active participation of her partners, Ms. Amos pressed ahead, opening her first Fuddruckers in 1984.

Over the next 27 years Ms. Amos ran a total of 15 different Fuddruckers restaurants in Florida and Tennessee. Ms. Amos operated her Fuddruckers enterprise through several partnerships and subchapter S corporations, each bearing some variation of the Abkey name (despite Mr. Willis's departure).

For her efforts, Ms. Amos was honored in 1993 by the National Association of Women Business Owners as its Outstanding Woman Business Owner. She was named to the board of trustees of the University of Miami in 1997, serving as the chair of the audit and compliance committee.

Ms. Amos's business fortunes began to decline in the late 1990s after Mr. Buoniconti brought a lawsuit relating to the business, which led to his receiving a hefty settlement payment. In 1999 Ms. Amos was forced to close one of her Fuddruckers locations. Her business fortunes continued to decline over the next decade, and Ms. Amos closed her last Fuddruckers restaurant in 2011.

II.  *1999 and 2000 Tax Reporting and IRS Audits*

Ms. Amos and her then husband, Dr. Thomas Righetti, filed joint income tax returns for 1999 and 2000, which were prepared by the accounting firm of Kaufman, Rossin & Co. On their 1999 return, the couple claimed a refund of $89,908. They reported adjustable gross income of negative $1,447,749, based upon, inter alia, wage income of $309,220, interest income of $71,793, and a loss of $1,818,202 from Ms. Amos's Fuddruckers enterprise. The couple calculated an NOL of $1,498,512 (based upon their negative gross income and deductions) and included on their tax return an election under section 172(b)(3) to forgo

---

[3] The name "Abkey" was an amalgam of the first initials of Amos and Buoniconti, as well as part of the name of one of Mr. Willis's companies.

**[\*4]** the two-year carryback period. They also attached an "NOL carryover worksheet," which set forth the reported NOL amount and identified it as originating in 1999.

On their 2000 return Ms. Amos and Dr. Righetti claimed a refund of $75,222. They reported adjustable gross income of negative $1,826,726, which they calculated by taking into account, inter alia, wage and interest income, losses of $699,996 from the Fuddruckers enterprise, and their 1999 NOL carryforward of $1,498,512. The couple claimed an NOL deduction for their 2000 tax year of $371,663, again electing to forgo the carryback period under section 172(b)(3). They also recorded their 2000 NOL on an NOL carryover worksheet, which reflected that they had a total NOL available (from 1999 and 2000) of $1,870,175.

The IRS audited Ms. Amos and Dr. Righetti's 2000 return as well as the 2000 return of Abkey Management Corp. (one of Ms. Amos's companies that managed some of her Fuddruckers establishments). The IRS ultimately agreed that there was no deficiency in the couple's 2000 tax.

By the time Ms. Amos filed her 2008 tax return, the NOL carryforward reported on her tax return had ballooned to $5,747,514.[4] The NOL carryforwards reported on Ms. Amos' tax returns exceeded $5.2 million for each of the next three years. For 2012 and 2013, the NOL carryforwards reported on her returns dipped to $4,375,505 and $4,302,895, respectively.[5]

III. *Ms. Amos's 2014 and 2015 Tax Returns*

Ms. Amos prepared and filed her 2014 tax return herself. On that return she reported individual retirement account (IRA) distributions of

---

[4] Dr. Righetti passed away in 2002, when a MiG-15 jet fighter that he was piloting for an air show crashed. *See Dr. Thomas R. Righetti*, The Aspen Times (Oct. 2, 2002), https://www.aspentimes.com/news/dr-thomas-r-righetti/.

[5] Ms. Amos received notices from the IRS regarding her 2003, 2005, and 2008 tax years, which stated that she owed nothing or was entitled to a refund. The notice relating to 2003 reflects adjusted gross income of $4,556,647 and no taxable income. Ms. Amos petitioned this Court with respect to a notice of deficiency for her 2009 tax year, which resulted in a stipulated decision determining a deficiency of $11,545 and additions to tax. The parties stipulated that the deficiency amount did not take into consideration the claimed NOLs from prior years, with Ms. Amos reserving the right to claim such NOLs in future years and the IRS reserving the right to challenge any such claimed losses.

**[*5]** $100,000 (as well as some small, miscellaneous income items) and claimed an NOL carryforward deduction of $4,220,639, resulting in negative $4,119,628 of adjusted gross income. After she took her 2014 deductions into account, her NOL decreased to $4,149,326, with a total tax due of zero. On an attached "net operating loss carryforward deduction statement," Ms. Amos stated that the carryforwards were "from losses incurred prior to 2012."

As with her 2014 return, Ms. Amos prepared and filed her own 2015 return. She reported IRA distributions of $90,000 (again with certain miscellaneous income items) and claimed an NOL carryforward deduction of $4,149,326, resulting in adjusted gross income of negative $4,058,261. She again reported that her total tax due was zero. And she attached another "net operating loss carryforward deduction statement," which explained only that the carryover "from 2014 [was] accumulated from prior years."

IV.    *Notice of Deficiency and Tax Court Proceedings*

In February 2018 the IRS sent Ms. Amos a notice of deficiency that determined deficiencies of $21,477 and $18,864, respectively, for her 2014 and 2015 tax years. The notice additionally determined penalties under section 6662(a)—$4,295 for 2014 and $3,773 for 2015. In an attachment to the notice the IRS explained that it had disallowed the claimed NOL deductions of $4,220,639 and $4,149,326 for 2014 and 2015, respectively, on the ground that Ms. Amos had not established that she sustained the loss in prior years or that any loss was available to be carried over to 2014 and 2015.

Ms. Amos filed a timely petition in this Court challenging the IRS's disallowance of the NOL deductions as reflected in the notice of deficiency, as well as the accuracy-related penalties. Ms. Amos resided in Florida when she filed the petition.

OPINION

I.    *Burden of Proof*

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and a taxpayer bears the burden of proving that the Commissioner's determinations are in error. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). The taxpayer also bears the burden of proving her entitlement to any deduction claimed. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). "If, in any court

**[\*6]** proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer . . . , the [Commissioner] shall have the burden of proof with respect to such issue." § 7491(a)(1); *see also Higbee v. Commissioner*, 116 T.C. 438, 440–41 (2001); *Bordelon v. Commissioner*, T.C. Memo. 2020-26, at \*11.

To avail herself of this burden shift, however, a taxpayer must have "complied with the requirements . . . to substantiate any item" and "maintained all records required under this title." § 7491(a)(2)(A) and (B). As to the latter, section 6001 provides that the Secretary "may require any person" to "keep such records, as the Secretary deems sufficient to show whether or not such person is liable for tax under this title." Treasury Regulation § 1.6001-1(a) specifies, in turn, that "any person subject to tax under subtitle A of the Code . . . shall keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information." As we will discuss in greater detail, Ms. Amos neither substantiated the items at issue nor maintained adequate records, and accordingly she is not entitled to a shift in the burden of proof under section 7491(a)(1).

II.   *NOL Deduction*

A.   *General Requirements*

Section 172 allows a taxpayer to deduct NOLs for a taxable year. The amount of the NOL deduction equals the aggregate of the NOL carryovers and NOL carrybacks to the taxable year. § 172(a). Section 172(c) defines an NOL as the excess of deductions over gross income, computed with certain modifications specified in section 172(d). *See, e.g.*, *Jasperson v. Commissioner*, T.C. Memo. 2015-186, at \*6, *aff'd*, 658 F. App'x 962 (11th Cir. 2016).

An unused NOL is first required to "be carried to the earliest of the taxable years to which . . . such loss may be carried." § 172(b)(2); *McRae v. Commissioner*, T.C. Memo. 2019-163, at \*23. Any excess NOL that is not applied in one year is carried to the next earlier year. § 172(b)(2). Absent an election under section 172(b)(3), an NOL for any taxable year first must be carried back 2 years and then carried over 20 years. § 172(b)(1)(A), (2), (3). A taxpayer claiming an NOL must file with her return "a concise statement setting forth the amount of the net

[*7] operating loss deduction claimed and all material and pertinent facts relative thereto, including a detailed schedule showing the computation of the net operating loss deduction." Treas. Reg. § 1.172-1(c).

"A taxpayer who claims a net operating loss deduction bears the burden of establishing both the existence of the net operating loss and the amount that may be carried over to the year involved." *Chico v. Commissioner*, T.C. Memo. 2019-123, at *39 (citing *Keith v. Commissioner*, 115 T.C. 605, 621 (2000)), *aff'd without published opinion*, No. 20-71017, 2021 WL 4705484 (9th Cir. Oct. 28, 2021). A taxpayer "cannot rely solely on [her] own income tax returns to establish the losses [she] sustained." *Barker v. Commissioner*, T.C. Memo. 2018-67, at *13, *aff'd*, 853 F. App'x 571 (11th Cir. 2021); *see also Wilkinson v. Commissioner*, 71 T.C. 633, 639 (1979). Importantly here, the taxpayer "must establish that the NOL was not fully absorbed in the years preceding the particular year for which [s]he seeks the NOL deduction." *Villanueva v. Commissioner*, T.C. Memo. 2022-27, at *3. "To meet this burden [Ms. Amos] must introduce convincing evidence that [she] incurred NOLs in the taxable years [1999–2000] and also prove [Ms. Amos's] taxable income for the period beginning with [2001] and ending with [2013]." *Power v. Commissioner*, T.C. Memo. 2016-157, at *14.

B. *Analysis*

Ms. Amos is not entitled to the claimed NOL carryforward deductions because (1) she failed to provide sufficient evidence of the underlying NOLs in 1999 and 2000 and (2) she failed to show that any NOL was available to carry forward to the years at issue. We will address each point in turn.

As an initial matter, Ms. Amos failed to establish that she incurred NOLs in 1999 and 2000. Ms. Amos relied primarily on her tax returns, as well as her own testimony, to establish these losses. We have previously held similar proof to be insufficient to substantiate a taxpayer's entitlement to a loss carryforward. *See Bulakites v. Commissioner*, T.C. Memo. 2017-79, at *8; *see also McRae*, T.C. Memo. 2019-163, at *26; *Ghafouri v. Commissioner*, T.C. Memo. 2016-6, at *9 ("The prior tax returns show only that [the taxpayers] claimed NOL carryforward deductions. They do not provide evidence that [the taxpayers] are entitled to them."); *Wagner v. Commissioner*, T.C. Memo. 2015-120, at *26–27.

[*8]    More specifically, Ms. Amos failed to adduce evidence that would give a full picture of her gross income and deductions as necessary to substantiate the claimed losses of $1,498,512 and $371,663 for 1999 and 2000, respectively.  Although the record contains some documents (such as tax returns for the year 2000 from various Abkey entities, business ledgers, and documentation of loan defaults) that support her claim of losses, Ms. Amos failed to link these documents to the purported NOLs either at trial or in her posttrial briefing.  *See, e.g.*, *Jasperson*, T.C. Memo. 2015-186, at *9 ("[W]ithout any sort of direction as to the contents of these documents, this type of voluminous, unverified, and indiscriminate documentation does not provide adequate substantiation of the items [the taxpayer] reported . . . .").  The fragmentary record before us is inadequate to establish her 1999 and 2000 income and deductions so as to substantiate the NOLs at issue.[6]

Even assuming arguendo that Ms. Amos incurred the purported losses in 1999 and 2000, she nonetheless failed to establish her entitlement to NOL carryforward deductions for 2014 and 2015.  To start, Ms. Amos did not include with the returns at issue (or the returns for earlier years for which an NOL carryforward deduction had been claimed) either a concise statement that set forth the material and relevant facts or a detailed schedule showing a computation of the NOL amount.  *See Ghafouri*, T.C. Memo. 2016-6, at *9; Treas. Reg. § 1.172-1(c).

---

[6] At trial, Ms. Amos argued that the Commissioner should be estopped from disallowing the NOL deductions because the IRS had not disallowed NOL deductions purportedly stemming from the same underlying losses in other years.  Ms. Amos failed to raise this issue either in her petition or in her posttrial briefs, and thus has conceded or abandoned the issue.  *See, e.g.*, Rule 34(b)(4); *Mendes v. Commissioner*, 121 T.C. 308, 312–13 (2003) ("If an argument is not pursued on brief, we may conclude that it has been abandoned."); *Elbasha v. Commissioner*, T.C. Memo. 2022-1, at *22 (failing to raise issue in petition deemed a concession).  In any event the IRS's prior allowance of a deduction does not bind the agency with respect to other years.  *See, e.g.*, *Black v. Commissioner*, T.C. Memo. 2007-364, 2007 WL 4302432, at *15 ("[The Commissioner's] failure to audit or disallow a loss claimed on a return for one year does not estop [him] from disallowing an NOL carryover of that loss to a future year."); *Frische v. Commissioner*, T.C. Memo. 2000-237, 2000 WL 1073327, at *3; *see also Taylor v. Commissioner*, T.C. Memo. 2009-235, 2009 WL 3326640, at *7 ("[T]he Commissioner may challenge in a succeeding year what was condoned or agreed to in a former year."); *Forste v. Commissioner*, T.C. Memo. 2003-103, 2003 WL 1889626, at *15 ("The doctrine of equitable estoppel does not bar [the Commissioner] from correcting mistakes of law.").  Nor do we believe that Ms. Amos has established that she satisfied the requirements for equitable estoppel (or collateral estoppel).  *See, e.g.*, *Korean-Am. Senior Mut. Ass'n, Inc. v. Commissioner*, T.C. Memo. 2020-129, at *30.

**[\*9]**  Ms. Amos failed to establish how much of the claimed 1999 and 2000 NOLs had been absorbed before the years at issue.  Specifically, she did not introduce a complete set of her 2001–13 tax returns as might allow us to determine how much of the purported NOL had been used.  Although Ms. Amos provided the first two pages of each of her tax returns from 2008–13, these snippets, lacking in context, give us no insight into the absorption of the 1999 and 2000 NOLs during this period.  Ms. Amos also relies on certain worksheets that she prepared, which showed that she had used a portion of each NOL as carryforward deductions for 2004, 2006–08, and 2012–13.  Ms. Amos, however, failed to introduce any support that might lend credence to the specific assertions in her worksheets.

In sum, we find that Ms. Amos failed to establish her entitlement to NOL carryforward deductions for 2014 and 2015, and we will sustain the Commissioner's disallowance of these deductions.[7]

III.  *Accuracy-Related Penalty*

An accuracy-related penalty of 20% is imposed on the portion of an underpayment of tax attributable to negligence.[8]  § 6662(a) and (b)(1).  Negligence includes the failure to properly substantiate items claimed on the return.  Treas. Reg. § 1.6662-3(b)(1).  The Commissioner bears the burden of production with respect to a taxpayer's liability for the section 6662(a) penalty and must produce evidence that the

---

[7] Ms. Amos suggests that she has introduced enough evidence to permit this Court to approximate her allowable NOL carryforward deductions.  "While we may estimate the amount of allowable deductions where there is evidence that deductible expenses were incurred, we must have some basis on which an estimate may be made." *Deutsch v. Commissioner*, T.C. Memo. 2012-318, at \*19 n.20.  Given the dearth of evidence in this case, we have no basis upon which to make an estimate and, therefore, decline to do so.

[8] In the notice of deficiency the IRS determined an accuracy-related penalty under section 6662(a) on the grounds of negligence and substantial understatement of income tax.  The Commissioner has not addressed the ground of substantial understatement in his briefs, however, and we thus conclude that the Commissioner has decided to forgo or has otherwise waived this argument.  *See, e.g.*, *Marks v. Commissioner*, T.C. Memo. 2018-49, at \*8; *Estate of Richard v. Commissioner*, T.C. Memo. 2012-173, 2012 WL 2344649, at \*5 n.18.

**[\*10]** imposition of the penalty is appropriate. *See* § 7491(c); *see also Higbee*, 116 T.C. at 446.[9]

The Commissioner has met his prima facie burden. Ms. Amos failed to substantiate the NOL carryover deductions claimed for 2014 and 2015, and the Commissioner thus has established negligence. *See* Treas. Reg. § 1.6662-3(b)(1); *see also Velez v. Commissioner*, T.C. Memo. 2018-46, at \*10 ("[The Commissioner] satisfied his burden of production with regard to negligence by establishing that [the taxpayer] did not maintain sufficient records to support the . . . deduction.").

The accuracy-related penalty does not apply to any part of an underpayment of tax if it is shown that the taxpayer acted with reasonable cause and in good faith with respect to that portion. § 6664(c)(1); *Rogers v. Commissioner*, T.C. Memo. 2019-61, at \*31, *aff'd*, 9 F.4th 576 (7th Cir. 2021). The determination of whether a taxpayer acted in good faith is made on a case-by-case basis, considering all the pertinent facts and circumstances. Treas. Reg. § 1.6664-4(b)(1). "A taxpayer's knowledge, education, and experience are relevant factors to indicate reasonable cause and good faith." *Rogers*, T.C. Memo. 2019-61, at \*31. Ms. Amos bears the burden of proving that she had reasonable cause and acted in good faith with respect to the underpayments. *See Higbee*, 116 T.C. at 449.

Ms. Amos claims that she acted with reasonable cause and in good faith, contending that she relied on professional advice in claiming the deductions and that it was reasonable for her to claim them because the IRS had allowed similar deductions in prior years. As an initial matter, Ms. Amos did not rely on any professional advice with respect to the 2014 and 2015 returns on which she claimed the NOL carryforward deductions. *See McRae*, T.C. Memo. 2019-163, at \*29. Although Ms. Amos and Dr. Righetti retained the services of the Kaufman firm to prepare their 1999 and 2000 tax returns, those are not the years at

---

[9] Ms. Amos has not raised the issue of whether the Commissioner complied with the supervisory approval requirements of section 6751. In any event, the record establishes that the revenue agent received written supervisory approval on July 5, 2017. As assessment has not yet occurred, *see* § 6215(a), the IRS has plainly satisfied the section 6751 requirement as interpreted by the Court of Appeals for the Eleventh Circuit, to which an appeal in this case would ordinarily lie, *see Kroner v. Commissioner*, 48 F.4th 1272, 1276 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73; *cf. Golsen v. Commissioner*, 54 T.C. 742, 757 (1970) ("[I]t is our best judgment that better judicial administration requires us to follow a Court of Appeals decision which is squarely in point where appeal from our decision lies to that Court of Appeals and to that court alone." (Footnote omitted.)), *aff'd*, 445 F.2d 985 (10th Cir. 1971).

**[\*11]** issue, and the firm did not opine on Ms. Amos's entitlement to claim the NOL carryforward deductions for 2014 and 2015. *See Cooper v. Commissioner*, 143 T.C. 194, 223 (2014), *aff'd*, 877 F.3d 1086 (9th Cir. 2017).

Ms. Amos's claim that she acted with reasonable cause and in good faith given the IRS's acquiescence to her tax positions in previous tax years fares no better. As an initial matter, the record contains little information regarding the previous tax years, leaving us unable to determine whether they were at all apposite. More significantly, Ms. Amos is a longtime CPA who has worked for high-profile clients, owned her own accounting firm, and been involved with national and state CPA associations. *See Donoghue v. Commissioner*, T.C. Memo. 2019-71, at \*47–48, *aff'd*, No. 19-2265, 2021 WL 6129132 (1st Cir. June 2, 2021). It beggars belief that she would be unaware that each tax year stands alone and that it was her responsibility to demonstrate her entitlement to the deductions she claimed. *See Rogers*, T.C. Memo. 2019-61, at \*31–32; *cf. Ochsner v. Commissioner*, T.C. Memo. 2010-122, 2010 WL 2220305, at \*7–8. We cannot find that Ms. Amos established that she acted with reasonable cause and in good faith when claiming the NOL carryforward deductions for 2014 and 2015. As a result, Ms. Amos is liable for accuracy-related penalties under section 6662(a).

IV.    *Conclusion*

We uphold the determinations in the notice of deficiency to disallow the NOL deductions Ms. Amos claimed for her 2014 and 2015 tax years. We also conclude that Ms. Amos is liable for the section 6662(a) penalties.

To reflect the foregoing,

*Decision will be entered for respondent.*