# United States Tax Court

T.C. Memo. 2024-103

MICHAEL H. SHAUT,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 16041-22.　　　　　　　　　　　　Filed November 6, 2024.

————

*Michael H. Shaut*, pro se.

*Ryan Z. Sarazin* and *John D. Davis*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

JONES, *Judge*: Petitioner, Michael H. Shaut, seeks redetermination of a deficiency in federal income tax determined by the Internal Revenue Service (IRS) for the 2019 taxable year. After concessions, the issues for decision are whether Mr. Shaut is (1) entitled to a theft or casualty loss deduction; (2) in the alternative, entitled to deduct legal fees as an ordinary and necessary business expense; (3) entitled to a net operating loss (NOL) deduction; and (4) liable for an accuracy-related penalty under section 6662(a).[1]

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulatory references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

**[\*2]** For the reasons set forth below, we will sustain the Commissioner's deficiency and accuracy-related penalty determinations, as limited by the parties' concessions and this Opinion.

FINDINGS OF FACT

The trial in this case took place during a Cleveland, Ohio, trial session. We incorporate by this reference the Stipulation of Facts, the Stipulated Exhibits, and any Exhibits admitted at trial and in the Court's post-trial Order, except as set forth herein.

Mr. Shaut resided in Ohio when he timely petitioned this Court.

I.    *Mr. Shaut's Education and Work History*

Mr. Shaut attended Colgate University for his undergraduate education, where he studied philosophy and religion. He attended Georgetown Law School and has worked in various roles as a lawyer since graduating. He has significant experience in business, economics, and finance.

When he first became an attorney, Mr. Shaut worked at a government agency and then for Conrail as an environmental and labor lawyer. He is also a member of the bar of this Court, and he has represented individuals before the IRS and this Court. But he acknowledged that his own trial is the first time he has had a trial before the Court.

When Mr. Shaut moved to Cleveland, he worked as a bank lawyer and then at a firm in a business consulting role. Eventually, he started a student loan company with former clients, which he ultimately sold to a Fortune 200 company. Although he stayed at the company for two years after selling it, the company eventually went bankrupt. In 2008, Mr. Shaut started a solar energy company named Carbon Vision, LLC (Carbon Vision), where he served as the chief executive officer.

II.    *Downing Investment Partners, LLP*

In February 2014, Mr. Shaut began investing in a company called Downing Investment Partners, LLP (Downing). Initially, Mr. Shaut transferred $250,000 to Downing as part of his investment, and he made additional investments in Downing. Though Downing purported to be engaged in the development of patentable technology, the first investment started what Mr. Shaut describes as a ten-year saga related

[*3] to the Downing "Ponzi" scheme. *See Jensen v. Commissioner*, T.C. Memo. 1993-393, 1993 WL 325102, at *1 n.1 (defining a Ponzi scheme), *aff'd*, 72 F.3d 135 (9th Cir. 1995); *Berenbeim v. Commissioner*, T.C. Memo. 1992-272, 1992 Tax Ct. Memo LEXIS 294, at *9 n.5 (defining a Ponzi scheme).

Mr. Shaut also made several loans to Downing from approximately 2014 through 2016, as the partnership experienced cashflow issues. The loans, ranging from the low five figures to over $100,000, were never repaid.

In March 2014, Mr. Shaut began working as Downing's president with a salary of $200,000. He served in that role until September 2014. According to Mr. Shaut, he ceased receiving a salary after he made his second investment in Downing and stopped serving as its president at that time. In total, Mr. Shaut received approximately $100,000 of his salary in 2014.

In February 2015, Mr. Shaut became a managing director of Downing, instead of an officer, so that he could fundraise for the company. In this role, he recruited several individuals to invest substantial sums, each investing $1 million or more. Mr. Shaut disclaims receiving any compensation for raising funds. However, he was given preferred or special investment options, such as warrants.

Eventually, a potential investor conducted significant due diligence into Downing's business practices. Despite potential financial issues with Downing, in June 2016, the investor lent $1,250,000, secured by Downing's anticipated patent technology. The loan was funded on the condition that the money be used for technological developments. In June of that year, Mr. Shaut also lent another $60,000 to Downing. Mr. Shaut was not repaid from any investor contributions.

Meanwhile, no progress was made on the development of Downing technology. Eventually, in approximately 2016, investors determined that principals of Downing had been misleading them and mismanaging Downing. Mr. Shaut stated that it became clear that one of the principals was dishonest and could not be trusted.

These discoveries led to legal action, including approximately 17 lawsuits, wherein Mr. Shaut was named as a defendant. According to Mr. Shaut, these lawsuits predominantly occurred and were resolved in the two years after the 2016 investor discoveries.

[*4] According to Mr. Shaut, two principals of Downing were eventually investigated, prosecuted, and sentenced to prison in 2019 for their roles in the scheme. Mr. Shaut claims that he spent approximately $600,000 in legal fees related to Downing. Further, Downing cost him all the money he had previously made, leaving him broke. Thus in 2019, Mr. Shaut began practicing law again at the age of 67.

III. *The IRS's Examination*

Mr. Shaut timely filed Form 1040–SR, U.S. Tax Return for Seniors, for the 2019 tax year (2019 Return). The IRS examined Mr. Shaut's 2019 Return.

On February 11, 2022, Group Manager Robin L. Lawless timely executed managerial approval of the substantial understatement penalty. On April 21, 2022, the IRS issued to Mr. Shaut a Notice of Deficiency (NOD) for the 2019 taxable year.

In the NOD, the IRS determined a deficiency of $38,149 and an accuracy-related penalty of $7,630. Respondent now concedes that Mr. Shaut did not receive an additional $97,454 in gross receipts reported on Schedule C, Profit or Loss From Business, as stated in the NOD.

IV. *The Amended Return*

Although Mr. Shaut prepared and filed a tax return for 2019, he admits that he "botched" the filing. Thus, after issuance of the NOD, Mr. Shaut prepared an amended return for 2019 and sent it to the IRS. Therein, he attempted to correct filing errors in the original 2019 Return and address the deficiency set forth in the NOD.

The amended return was accompanied by a letter from Mr. Shaut's certified public accountant (CPA). According to the letter, Mr. Shaut needed to correct several errors on his original tax return. In relevant part the letter requested that the IRS:

- Allow a fraud loss deduction related to Downing; and

- Reinstate a carryover NOL of approximately $570,000.

We will address each in more detail.

First, Mr. Shaut's CPA stated that Mr. Shaut is entitled to deduct a fraud loss related to Downing. The amended return included

**[\*5]** Form 4684, Casualties and Thefts, claiming a fraud or casualty loss related to Downing. His purported loss is comprised of a $720,000 investment in Downing and approximately $600,000 in attorney's fees. Although these amounts total $1,320,000, the CPA stated that Mr. Shaut is entitled to a fraud loss of $1,380,000. On the form, Mr. Shaut stated that he was the victim of investment fraud, with no recovery made.

Mr. Shaut claimed the $600,000 in legal expenses was related to his protection and defense of his investment in Downing. However, he did not produce legal bills totaling $600,000. The parties stipulated that Mr. Shaut produced legal bills totaling approximately $539,000. Those bills are for various years, including 2017, 2018, 2019, and 2021.

Mr. Shaut also claimed approximately $720,000 in losses related to his investment in and loans to Downing. Mr. Shaut produced various receipts and promissory notes from Downing, purportedly demonstrating wire transfers between 2014 and 2016 to Downing. However, these amounts do not equal $720,000, and Mr. Shaut admits that he is missing documentation for some of the claimed wire transfers.

Finally, the amended return included carryforward Schedule C losses from the 2018 taxable year of approximately $570,000. Although the amount was initially reported as an NOL for Shaut Law Offices, the amended return reported that amount on a Schedule C for Carbon Vision. Mr. Shaut also reported an additional $44,380 of Schedule C expenses.

The amended return has not been processed or accepted by the IRS.

V.     *Mr. Shaut's 2017 and 2018 Tax Returns*

Because Mr. Shaut claims an NOL, we also take into account his relevant prior income tax returns. *See, e.g., Deutsch v. Commissioner*, T.C. Memo. 2012-318, at \*9. Thus, we consider Mr. Shaut's 2017 and 2018 tax returns.

On Mr. Shaut's 2017 tax return (2017 Return), he reported negative taxable income of $72,399, purportedly the result of a claimed 2016 NOL carryforward of $99,903. The 2017 Return listed a net loss of $306,705 for Carbon Vision. The 2017 Return also included Form 1045, Application for Tentative Refund, Schedule A, NOL, which lists an NOL of $5,894 remaining for carryforward.

**[\*6]** On his 2018 Form 1040, Mr. Shaut reported zero wages or other income after business losses of approximately $567,806, claimed on three separate Schedules C. The first Schedule C was for Shaut Law Offices and reported a loss of $233,093. The Schedule C also reported "Personal losses carry over from 2017" of $109,547 under Other Expenses.

The second Schedule C was for Carbon Vision and reported a net loss of $74,013, including $32,500 in legal and professional expenses, but no net loss carryforward. The third Schedule C was for Downing, which Mr. Shaut described as a business investment firm. On that Schedule C, Mr. Shaut reported no gross receipts and $260,700 in expenses.

OPINION

I.    *Evidentiary Issue Regarding Exhibit 14-R*

Before we examine the issues for decision, we must first address Mr. Shaut's objections to Exhibit 14-R (Doc. 32), an Arbitration Award related to another case involving Downing. At trial, respondent offered Exhibit 14-R, purportedly for the sole purpose of impeachment. But on brief, respondent uses the Arbitration Award to make substantive factual points and relies upon the Exhibit for the truth of the matter asserted.

Mr. Shaut asks the Court to reconsider its decision to admit the Arbitration Award. On brief, he argues that the contents of the Arbitration Award are misleading. He also argues that the evidence was a surprise, should have been disclosed before trial, and, therefore, should be excluded for this additional reason.

Any party may attack the credibility of a witness, including by offering impeachment evidence. *See* Fed. R. Evid. 607; *see also Barkley Co. of Ariz. v. Commissioner*, 89 T.C. 66, 68 (1987). One way that a party can impeach a witness is by offering evidence that a fact to which a witness testified is not true. *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6096 (2d ed. 2023 & Supp. 2024); *see also United States v. Abel*, 469 U.S. 45, 50–51 (1984).

Impeachment evidence is admissible unless excluded under the Federal Rules of Evidence. Wright & Miller, *supra*, § 6092; *see also, e.g., Costa v. Commissioner*, T.C. Memo. 1990-572 (examining whether a document offered for impeachment purposes may be admitted where portions are otherwise inadmissible hearsay). Thus, an out-of-court

[*7] statement, offered for impeachment purposes, is *inadmissible* to the extent the statement is offered to show the truth of its contents, unless an exception to hearsay applies. *United States v. Morlang*, 531 F.2d 183, 190 (4th Cir. 1975); *Mississippi ex rel. Derrow v. Burham*, 444 F.2d 152 (5th Cir. 1971); *Hood v. Bare*, No. 17-cv-471, 2021 WL 5001929, at *8 (S.D. Ohio Oct. 28, 2021); *see also Exxon Corp. & Affiliated Cos. v. Commissioner*, T.C. Memo. 1992-92, 1992 Tax Ct. Memo LEXIS 94.

Here, the Arbitration Award clearly contradicts Mr. Shaut's testimony. But it also contains hearsay statements, and respondent has not offered an exception for admission of the Arbitration Award so as to rely upon it for the truth of the matter asserted. *See, e.g.*, *United States v. Stinson*, 647 F.3d 1196, 1210 (9th Cir. 2011); *Lobster 207, LLC v. Pettegrow*, No. 19-cv-00552, 2023 WL 4882808, at *2 (D. Me. Aug. 1, 2023) ("As a general rule, an arbitrator's award, like the decision of a judge, is inadmissible hearsay when offered to prove the truth of the findings found therein unless an exception to the hearsay rule applies."); *see also Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 244 F. Supp. 3d 716, 720 (N.D. Ill. 2017) (observing that it is an abuse of discretion to accept arbitration findings as proving truth of matter asserted); *Bucur v. FedEx Ground Package Sys. Inc.*, No. 15-cv-1117, 2015 WL 13285090, at *1 n.2 (C.D. Cal. Sept. 10, 2015) (noting that court would take judicial notice of award but would not accept findings in arbitration award for truth of matter asserted).

But, equally concerning to the Court, the Arbitration Award was introduced late in the trial. Our Standing Pretrial Order (Doc. 13) requires the parties to exchange proposed trial exhibits. The Order states:

> No later than 14 days before the first day of the trial session . . . [a]ll documents or materials (except impeachment documents or materials) that a party expects to use at trial that are not in the Stipulation of Facts must be exchanged with the opposing party as Proposed Trial Exhibits.

(Doc. 13 at 3).

Although the Order does not require exchange of impeachment evidence, we have previously held that this exception relates to unanticipated arguments. *See Exxon Corp. & Affiliated Cos.*, 1992 Tax Ct. Memo LEXIS 94. Further, "evidence which is inadmissible for

[*8] substantive purposes may not be deliberately introduced under the guise of impeachment." *Id.* at *75 (first citing *United States v. Gomez-Gallardo*, 915 F.2d 553, 555–56 (9th Cir. 1990); and then citing *United States v. Peterman*, 841 F.2d 1474, 1479 (10th Cir. 1988)). While most of the cases employing this rule are in a criminal context, it has been applied in civil cases as well. *See Whitehurst v. Wright*, 592 F.2d 834, 839 (5th Cir. 1979).

Mr. Shaut's testimony was not a surprise to respondent. Long before this litigation commenced, Mr. Shaut claimed to be a victim of fraud related to Downing. Thus, Mr. Shaut's testimony was anticipated. Moreover, it appears that respondent is attempting to use inadmissible hearsay for substantive findings, through the guise of impeachment.

On the facts before us, we find that the Arbitration Award should have been disclosed before trial. Accordingly, the Court will vacate its admission of the Arbitration Award and will sustain Mr. Shaut's objections to Exhibit 14-R. Exhibit 14-R is no longer admitted as an exhibit in this case. Further, to cure any potential prejudice to Mr. Shaut, the Court has not considered any testimony related to Exhibit 14-R.

II. *Burden of Proof*

The determinations in a Notice of Deficiency bear a presumption of correctness, *see Welch v. Helvering*, 290 U.S. 111, 115 (1933), and the taxpayer generally bears the burden of proving them erroneous in proceedings in this Court, *see* Rule 142(a)(1). The taxpayer also bears the burden of proving entitlement to any deduction claimed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). Thus, a taxpayer claiming a deduction on a federal income tax return must demonstrate that the deduction is provided for by statute and must maintain records sufficient to enable the Commissioner to determine the correct tax liability. *See* § 6001; *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976); Treas. Reg. § 1.6001-1(a).

III. *Evaluation of Evidence*

In deciding whether a taxpayer has carried his burden of proof, witness credibility is an important consideration. *Ishizaki v. Commissioner*, T.C. Memo. 2001-318, 2001 WL 1658189, at *7. "[T]he distillation of truth from falsehood . . . is the daily grist of judicial life." *Diaz v. Commissioner*, 58 T.C. 560, 564 (1972). "As a trier of fact, it is

[*9] our duty to listen to the testimony, observe the demeanor of the witnesses, weigh the evidence, and determine what we believe." *Kropp v. Commissioner*, T.C. Memo. 2000-148, 2000 WL 472840, at *3.

We found Mr. Shaut's testimony to present a complicated picture. At first blush, Mr. Shaut presented a compelling story regarding his business acumen, success of various businesses, and the aftermath of the downfall of Downing, including his substantial loss. But we found his testimony regarding his limited role in Downing to be self-serving. On the basis of our evaluation of his statements and demeanor at trial, we found much of his testimony regarding Downing and his lack of knowledge regarding the inner workings to be implausible. It is improbable that Mr. Shaut served as president and later as managing director of Downing—in the latter role raising millions of dollars—while having no role in Downing's day-to-day operations or a detailed understanding of Downing's finances and operations. With this credibility determination in the background, we will now turn to examining the disputed issues in this matter.

IV.     *Casualty and Loss Deduction for 2019*

Section 165(a) and (c) allows a deduction for losses arising from a qualifying casualty or loss, including theft, not compensated for by insurance or otherwise. *See* Treas. Reg. § 1.165-8; *see also Brooks v. Commissioner*, T.C. Memo. 2013-141, at *14–15. Theft includes, but is not limited to, larceny, embezzlement, or robbery. Treas. Reg. § 1.165-8(d) (construing section 165(c)(3)).

To deduct a theft loss, a taxpayer must prove the existence of a theft, the amount of the deductible loss, and the year in which the loss was discovered. § 165(e); Treas. Reg. § 1.165-8(a); *see also Vennes v. Commissioner*, T.C. Memo. 2021-93, at *28–29. The act resulting in the alleged theft loss must have been a criminal act under the law of the state in which the alleged theft occurred. *Paine v. Commissioner*, 63 T.C. 736, 740 (1975), *aff'd without published opinion*, 523 F.2d 1053 (5th Cir. 1975); *see also Pascucci v. Commissioner*, T.C. Memo. 2024-43, at *13–14. The measure of a theft loss is the difference between the fair market value of the property before and after the theft. Treas. Reg. §§ 1.165-7(b)(1), 1.165-8(c). Further, "any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." *See* § 165(e); *see also* Treas. Reg. § 1.165-1(a), (d)(3). Moreover, there can be no reasonable prospect of recovery for a theft loss deduction. Treas. Reg. § 1.165-8(a)(2).

[*10] As an initial matter, Mr. Shaut has not introduced any reliable evidence indicating when he discovered that the purported theft occurred. According to Mr. Shaut's own testimony, his investment in and purported loans to Downing all occurred before 2019. Most of his legal fees are for years other than the tax year at issue, and most of the litigation was resolved by 2018. Mr. Shaut also testified that it became clear in 2016 that a principal of Downing had been misleading him and other investors, was dishonest, and could not be trusted.

Thus, it is evident that Mr. Shaut knew before 2019 that Downing was a financial failure, that improper activity occurred, and that he would not recover his investment. For these reasons alone, Mr. Shaut failed to carry his burden of demonstrating that his purported theft losses were "discovered" in 2019, thus entitling him to a casualty loss deduction for that year. *See Giunta v. Commissioner*, T.C. Memo. 2018-180, at *17–18 (finding that the taxpayers did not establish the year in which they discovered the loss).

But, to the extent any loss can be attributed to the tax year at issue, Mr. Shaut has failed to carry his burden of demonstrating that he was the victim of theft. *See Paine*, 63 T.C. at 740; *Greenberger v. United States*, No. 14-cv-01041, 2015 WL 4076976, at *4–11 (N.D. Ohio June 19, 2015) (examining theft under Ohio law). To the contrary, he was the president of Downing for six months. Although he claims no intimate involvement in the Downing operations after his role as president ended, we find Mr. Shaut's explanation implausible and not credible. Mr. Shaut has extensive business expertise; he started multiple successful businesses. After his role as the president at Downing, he served the crucial role of raising millions of dollars for Downing. Indeed, he brought on investors who were ultimately victims of the Downing scheme. His self-serving testimony alleging theft is insufficient in this case to meet his burden of proof. *See Seaver v. Commissioner*, T.C. Memo. 2009-270, 2009 WL 4163553, at *3–4 (denying theft loss deduction where taxpayers "provided only uncorroborated testimony").

Further, to the extent Mr. Shaut was somehow unaware of the irregularities at Downing, he has not demonstrated that his investments in Downing were anything more than a bad business decision. The casualty and theft loss provision under section 165 is not "designed to take care of *all* losses that the economic world may bestow on its inhabitants." *Friedman v. Commissioner*, T.C. Memo. 1992-588, 1992 WL 245961, at *4 (quoting *Billman v. Commissioner*, 73 T.C. 139, 141 (1979)), *aff'd without published opinion*, 48 F.3d 535 (11th Cir.

**[\*11]** 1995). There is no credible evidence that Mr. Shaut lost all of his investment and was never repaid for his loans. We find such a claim to be improbable, and therefore Mr. Shaut has not met his burden of demonstrating the purported amount of the theft loss.

Finally, Mr. Shaut has not demonstrated that his legal fees or expenses are the result of a purported theft loss. Litigation costs may be included as "further or additional or collateral theft losses" in certain circumstances. *Ander v. Commissioner*, 47 T.C. 592, 595 (1967); *see also Tarsey v. Commissioner*, 56 T.C. 553, 555–56 (1971) (disallowing legal fees as part of purported "property" loss). Here, because there was no theft loss in the first instance, Mr. Shaut's claimed legal fees and other costs related to Downing civil litigation are not eligible as deductions for a theft loss.

We appreciate the difficulty of Mr. Shaut's financial circumstances; he earned a significant amount from previous business ventures and then lost it. But we find that he has failed to substantiate entitlement to a theft loss deduction, for 2019 or any year. Accordingly, we sustain respondent's determination that the casualty loss deduction should be disallowed. *See, e.g.*, *Stoddard v. Commissioner*, T.C. Memo. 2002-31, 2002 WL 122315, at \*6–7 (finding that the taxpayers introduced no reliable evidence to establish that the casualty loss occurred).

V.    *Business Expenses Under Section 162*

As an alternative position, Mr. Shaut argues that he is entitled to deduct his legal expenses under section 162. Sections 162(a) and 212 permit a deduction for ordinary and necessary expenses paid to carry on a trade or business or for the production of income during the taxable year. An "ordinary" expense is one that is common and acceptable in the particular business. *Welch v. Helvering*, 290 U.S. at 113–14. A "necessary" expense under section 162(a) is an expense that is appropriate and helpful in carrying on the trade or business. *Heineman v. Commissioner*, 82 T.C. 538, 543 (1984). A taxpayer must maintain adequate records to demonstrate the propriety of any deduction claimed. *Higbee v. Commissioner*, 116 T.C. 438, 440 (2001); *see also* § 6001. Further, "[a] taxpayer's self-serving declaration is generally not a sufficient substitute for records." *Fine v. Commissioner*, T.C. Memo. 2013-248, at \*4.

**[\*12]** It is not entirely clear which business Mr. Shaut claims should bear the Downing legal fees as an ordinary and necessary expense. Other than expenses reported by his own law firm, the proposed amended return does not include legal fees on a Schedule C. Nonetheless, Mr. Shaut appears to suggest that his legal fee deduction should be permitted as a business expense for Downing.

Regardless, Mr. Shaut failed to present reliable evidence substantiating reported legal expenses associated with a business for the 2019 taxable year. First, many of the legal invoices submitted were for years other than 2019. Only business expenses incurred *during the taxable* year are deductible under section 162. *See, e.g., United States v. Gen. Dynamics Corp.*, 481 U.S. 239, 242 (1987). Second, Mr. Shaut has not presented any reliable evidence that these legal bills were a business expense incurred in the ordinary course of conducting a trade or business. Rather, Mr. Shaut claimed at trial that these expenses are related to a fraud loss.

Even more problematic, Mr. Shaut's alternative position is entirely inconsistent with his claimed role at Downing. On the one hand, Mr. Shaut claims that he was merely an individual who helped raise money for Downing and that he had no role in its day-to-day operations. On the other hand, he now claims that he was engaged in a business at Downing and is entitled to deduct nearly $600,000 in legal fees as an ordinary and necessary expense. Mr. Shaut cannot have it both ways.

We find that Mr. Shaut has not met his burden of demonstrating that the legal fees were ordinary and necessary expenses incurred in a trade or business during the 2019 taxable year.[2]

VI. *Carryforward NOL*

Next, we examine whether Mr. Shaut is entitled to deduct a carryforward NOL. Section 172 allows a taxpayer to deduct an NOL carryover from earlier years when its taxable income in the current year is more than zero. § 172(a), (b)(2). An NOL is the excess of deductions

---

[2] If a taxpayer is unable to substantiate the amount of a deduction, the Court may nonetheless allow it (or a portion thereof) if there is an evidentiary basis for doing so. *See Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930). To apply the *Cohan* rule, the Court must have a reasonable basis upon which to make an estimate. *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985). Mr. Shaut failed to properly establish that the alleged expenses were ordinary and necessary business expenses. Thus, application of the *Cohan* rule would be inappropriate in this case. We also note that Mr. Shaut did not invoke the *Cohan* rule as an alternative position.

**[\*13]** over gross income, computed with certain modifications specified in section 172(d). *See also* § 172(c).

"A taxpayer who claims [an NOL] deduction bears the burden of establishing both the existence of the [NOL] and the amount that may be carried over to the year involved." *Chico v. Commissioner*, T.C. Memo. 2019-123, at \*39 (citing *Keith v. Commissioner*, 115 T.C. 605, 621 (2000)), *aff'd*, No. 20-71017, 2021 WL 4705484 (9th Cir. Oct. 8, 2021); *Scharringhausen v. Commissioner*, T.C. Memo. 2012-350. Tax returns are merely statements of a taxpayer's position. *See Benavides & Co., P.C. v. Commissioner*, T.C. Memo. 2019-115, at \*17. Thus, they cannot be used to substantiate a claimed deduction, including the amount of the NOL to be carried forward. *See Sparkman v. Commissioner*, 509 F.3d 1149, 1156–57 (9th Cir. 2007), *aff'g* T.C. Memo. 2005-136; *see also Wilkinson v. Commissioner*, 71 T.C. 633, 639 (1979); *Davison v. Commissioner*, T.C. Memo. 2023-139, at \*18; *Amos v. Commissioner*, T.C. Memo. 2022-109, at \*7, *aff'd per curiam*, No. 23-10532, 2024 WL 1406646 (11th Cir. Apr. 2, 2024).

Here, beyond his own testimony and tax returns, Mr. Shaut did not offer any evidence proving the existence and amount of an NOL carryforward from the 2017 or 2018 taxable year. Absent some other credible corroborating evidence, these tax returns and self-serving statements are insufficient to substantiate Mr. Shaut's entitlement to an NOL carryforward for 2019. *See Aulisio v. Commissioner*, T.C. Memo. 2024-29, at \*33–35; *see also Amos*, T.C. Memo. 2022-109, at \*7; *Bulakites v. Commissioner*, T.C. Memo. 2017-79, at \*8.

Indeed, as noted by respondent, Mr. Shaut's tax returns are inconsistent with his claimed NOL carryforward. For example, Mr. Shaut's 2017 Return shows a total remaining carryforward of only $5,894. Yet, on his 2018 tax return, Mr. Shaut claimed over $109,000 for a carryforward NOL from 2017. These inconsistent positions on Mr. Shaut's tax returns further undermine his credibility and entitlement to an NOL carryforward.

In the light of the foregoing, Mr. Shaut has not established that he had losses for 2017 and 2018 that can be carried forward to 2019, and he is not entitled to an NOL. Thus, we sustain respondent's determination that Mr. Shaut is not entitled to the claimed NOL deduction. *See Villanueva v. Commissioner*, T.C. Memo. 2022-27, at \*3–4.

**[\*14]** VII.  *Penalties*

The last issue for us to decide is whether Mr. Shaut is liable for an accuracy-related penalty for an underpayment of tax required to be shown on a return attributable to a substantial understatement of income tax under section 6662(a) and (b)(2). Section 7491(c) generally provides that "the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty." This burden requires the Commissioner to come forward with sufficient evidence indicating that the imposition of the penalty is appropriate.[3] *See Higbee*, 116 T.C. at 446. Once the Commissioner meets his burden of production, the burden of proof is on the taxpayer to "come forward with evidence sufficient to persuade a Court that the Commissioner's determination is incorrect." *Id.* at 447.

An understatement of income tax is "substantial" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. *See* § 6662(d)(1)(A). Accordingly, to the extent Rule 155 computations confirm there is a substantial understatement of income tax, we sustain respondent's imposition of an accuracy-related penalty. *See, e.g.*, *Smiley v. Commissioner*, T.C. Memo. 2024-66, at \*44.

VIII.  *Conclusion*

On the basis of the foregoing and concessions by the parties, we sustain the Commissioner's deficiency and penalty determinations, as set forth herein. In reaching our conclusions, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[3] Respondent must also demonstrate compliance with supervisory approval pursuant to section 6751(b). *See Frost v. Commissioner*, 154 T.C. 23, 34 (2020). The record reflects that respondent has met his burden under section 7491(c) to demonstrate compliance with the requirements of section 6751(b).